54 P.3d 665 (2002)
113 Wash.App. 306
Deborah and Randall SMITH, Russell and Janyce Taylor, Russell and Eulala Shute, Clay and Lynn Westby, and Richard L. Johnson and Jay Johnson, Mark and Tamara Feeser, Scott and Kristine Tomlin, Scott and Judy Heiner, Mike and Connie Stullick, individually and on behalf of all individuals and entities similarly situated, Respondents/Cross Appellants,
v.
BEHR PROCESS CORPORATION, a foreign corporation, Appellants/Cross Respondents.
No. 25670-3-II.
Court of Appeals of Washington, Division 2.
September 13, 2002.
*670 Fredric Tausend, Theodore J. Angelis, Helen Bergman Moure, Philip Mosby Guess, Preston, Gates & Ellis, Evan L. Schwab, Margarita V. Latsinova, Dorsey & Whitney, Seattle, WA, for Appellants/Cross-Respondents.
David L. Edwards, Edwards & Hagen, Aberdeen, WA, Paul Lester Stritmatter, Stritmatter, Kessler, Hoquiam, WA, Kevin Coluccio, Garth L. Jones, Michael E. Withey, Stritmatter, Kessler, Whelan, Seattle, WA, Charles Kenneth Wiggins, Bainbridge Is, WA, for Respondents/Cross-Appellants. *666 *667 *668
*669 SEINFELD, J.
Behr Process Corporation appeals a judgment against it in this class action lawsuit. It claims trial court error in (1) certifying as a class all users of several Behr coating products in 19 western Washington counties; (2) entering a default judgment as to liability because of Behr's discovery violations; (3) making various rulings in the post default damages trial; (4) awarding treble damages under Washington's Consumer Protection Act (CPA) to the class representatives; (5) refusing to recuse; and (6) awarding attorney fees and costs under the CPA. The class cross-appeals the trial court's denial of treble damages to the represented class members under the CPA.
Finding no abuse of discretion in certifying the class, in granting a default judgment, in conducting a jury trial on damages and an evidentiary hearing on treble damages under the CPA, or in declining to recuse, we affirm in part. But finding an absence of findings to support a portion of the CPA attorney fees and trial court error in failing to segregate attorney time spent on other theories, we reverse and remand the attorney fees award for further consideration. Regarding the class's cross-appeal, we find that the trial court erred in concluding that it had no discretion to award treble damages under the CPA to the represented class members. Thus, we also remand for consideration of such an award.

FACTS
Behr sells its products through 90 retail outlets in western Washington. In May 1998, the class sued Behr on behalf of all residents of 19 western Washington counties *671 who had used four Behr products: "Super Liquid Raw-Hide" Nos. 12 and 13 and "Natural Seal Plus" Nos. 80 and 92. Clerk's Papers (CP) (Packet 1) at 2. The class's complaint alleged that these products, which were intended for use on exterior wood surfaces, caused extensive mildew damage to the class members' homes.
The second amended complaint alleged: (1) breach of common law contract and good faith and fair dealing, RCW 62A.1-203; (2) breach of implied warranties, RCW 62A.2-314 and RCW 62A.2-315; (3) breach of express warranties, RCW 62A.2-313; and (4) violations of Washington's CPA, RCW 19.86 et seq.[1] The trial court granted the class's certification motion in January 1999 and later granted its motion for partial summary judgment, finding that Behr had breached the implied warranty of merchantability and express warranties.
The court ordered both parties to disclose their expert and lay witnesses by August 16, 1999, and to complete discovery by February 28, 2000; it scheduled trial for May 2, 2000. When Behr failed to meet the witness disclosure deadline, the class moved for sanctions under CR 37(b). Finding that Behr had violated the pre-trial scheduling order, the trial court set new disclosure deadlines, precluded Behr from deposing the class's experts until it disclosed its own, and awarded attorney fees to the class.
In April 2000, the class moved for an order excluding two Behr experts based on Behr's failure to disclose their opinions and the bases for them. Behr responded that its expert disclosures were incomplete because the class had not provided its final expert opinions. Nonetheless, Behr voluntarily struck one of the experts. The trial court then excluded that part of the other expert's testimony that did not depend on the opinions of the class's experts.
On Friday, April 28, 2000, the class deposed the manager of a Troy Chemical Corporation (Troy) paint laboratory. Troy had provided the mildewcide in the allegedly defective Behr products. The manager testified that tests Troy performed at Behr's request showed a possible chemical incompatibility between the mildewcide in Behr's coating products and other ingredients and that Troy had reported the test results to Behr.
Behr had failed to disclose the testing or the test reports during discovery. Consequently, on May 1, the Monday following the deposition, the class brought an emergency motion regarding this violation. Behr responded with a request to delay jury selection and hold an evidentiary hearing on the class's motion two weeks later. The court rejected the request to delay jury selection but allowed the parties a week to investigate the alleged discovery violations.
The trial court held a three-day evidentiary hearing on the class's motion for sanctions. The class initially based the motion on Behr's failure to timely produce information about an exterior exposure test that Troy had conducted for Behr between March and September 1999 and the results of a chemical stability test that Troy had provided to Behr in December 1999. Both tests involved the challenged products. While investigating these alleged discovery violations, the class also discovered additional undisclosed documents.
On May 15, the trial court found that Behr had willfully and deliberately failed to disclose evidence, that the class and the judicial system were substantially prejudiced by this failure, and that only a default judgment would adequately remedy the harm to the class and also punish Behr. The court then entered a default judgment against Behr as to liability on all of the class's claims and ordered trial to proceed solely on the issue of damages.
The class then moved to exclude evidence of the class members' failure to mitigate damages and for a directed verdict on damages. In support, the class asserted that (1) the default order converted the class's allegations in its complaint to verities; (2) under the Uniform Commercial Code (UCC), once a *672 plaintiff establishes a breach of warranty, the plaintiff is automatically entitled to incidental damages and consequential damages if there is supporting proof; (3) Behr had no evidence of alternative remediation as it had not disclosed any relevant witnesses and the trial court had earlier excluded Behr's experts for failing to make a timely and adequate disclosure; (4) Behr had neither disclosed any witnesses nor provided other evidence to rebut the class's damage matrices; and (5) under the UCC, a seller who defends a breach of warranty claim on the basis of product misuse may not also argue failure to mitigate.
The trial court granted the motion to exclude evidence of the class's failure to mitigate. Thus, the case went to the jury solely on the amount of damages.
At the damages trial, the court summarized its previous legal rulings for the jury, including the fact that liability had been established on each of the class's claims. During the four-day trial, the jury heard testimony from the nine class representatives, the class's expert witness, and Behr's co-chairman. The court then instructed the jury that certain facts had been established; that Behr was liable as a matter of law; that the class members had been damaged as a direct and proximate result of Behr's acts or omissions; that the jury could not consider a variety of evidence, including the class members' failure to maintain their homes or otherwise mitigate the damages; and that class members were entitled to recover certain types of damages.
The jury awarded damages ranging from $14,454 to $87,818 to the class representatives. The jury also adopted damage matrices setting forth damage amounts for the represented class members who used the subject products.
The trial court next held an evidentiary hearing on the class's motion for an award of treble damages for the CPA violations established by the default order. There was no live testimony, only exhibits, documents, and deposition excerpts provided by the class and one affidavit offered by Behr's counsel. Behr objected to this evidentiary hearing procedure. The trial court awarded treble damages to the class representatives but concluded that the CPA did not authorize an award of treble damages to the represented class members.
Finally, the trial court held a hearing on the class's motion for attorney fees and costs awardable under the CPA and as compensation for Behr's discovery violations. The trial court granted both motions, awarding $2,053,688 in attorney fees under the CPA and $130,245 in attorney fees and costs for the discovery violations.

DISCUSSION

I. CLASS CERTIFICATION
Behr challenges the trial court's decision to certify the class, asserting that the class failed to satisfy the commonality, typicality, and higher predominance requirements of CR 23. At the time the trial court heard the certification motion, the class action complaint alleged seven claims: breach of common law contract and good faith and fair dealing; breach of implied warranty; breach of express warranty; CPA violations; intentional, reckless or negligent misrepresentation; negligence; and strict liability. The putative class sought compensatory and statutory damages, including attorney fees and treble damages, and injunctive relief.
We review the trial court's class certification decision for a manifest abuse of discretion. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 47, 905 P.2d 338 (1995). We will uphold the court's decision if the record indicates that the court considered the CR 23 criteria and if the decision is based on tenable grounds and is not manifestly unreasonable. Lacey, 128 Wash.2d at 47, 905 P.2d 338 (citing Eriks v. Denver, 118 Wash.2d 451, 467, 824 P.2d 1207 (1992)); Oda v. State, 111 Wash.App. 79, 91, 44 P.3d 8 (2002).
Washington courts favor a liberal interpretation of CR 23 as the rule avoids multiplicity of litigation, "saves members of the class the cost and trouble of filing individual suits[,] and ... also frees the defendant from the harassment of identical future litigation." Brown v. Brown, 6 Wash.App. *673 249, 256-57, 492 P.2d 581 (1971). "[A] primary function of the class suit is to provide a procedure for vindicating claims which, taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group." Brown, 6 Wash.App. at 253, 492 P.2d 581. As a federal court has stated, "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing the class action." Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir.1968).[2]
Here, the trial court considered each of the CR 23 criteria and granted certification, accepting the class's proposed definition as:
All persons and entities who purchased defendant's Products "Super Liquid Raw-Hide" or "Natural Seal Plus" and applied said Products to a natural wood exterior such as log homes, wood siding and wood fencing, and within the State of Washington, west of the Cascade Mountain range, including the counties of Skamania, Clark, Cowlitz, Lewis, Pacific, Grays Harbor, Jefferson, Clallam, Island, King, Pierce, Thurston, Snohomish, Skagit, Whatcom, Wahkaikum, Mason, Kitsap and San Juan.
CP (Packet 3) at 336. Behr challenges the trial court's certification decision, arguing that product liability cases inherently involve disparate user facts that make joint adjudication inappropriate.
CR 23(a) contains four threshold certification requirements: numerosity, commonality, typicality, and adequacy of representation.[3] Behr does not contend that the class failed to satisfy the CR 23(a) numerosity or adequacy of representation requirements.
Behr does challenge the commonality requirement of CR 23(a), but there is a low threshold to satisfy this test. In re Am. Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir.1996). The commonality test "`is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class.'" In re Am. Med. Sys., 75 F.3d at 1080 (quoting 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 3.10, at 3-50 (3d ed.1992)); see also In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 174 (E.D.Pa. 1997) ("[A] common question need only exist, not predominate, for the [commonality] requirement to be satisfied.").
The trial court identified a number of common questions of law and fact, including the chemical formulation of Behr's products, the general dampness and humidity of the western Washington climate, the adequacy of Behr's product labeling and promotional materials, and the question of who has the duty to add additional mildewcide to the products, Behr or the consumer.[4] Any one of these common issues is sufficient to satisfy the CR 23(a) commonality requirement. See In re Am. Med. Sys., 75 F.3d at 1080; In re Orthopedic, 176 F.R.D. at 174.
As to the CR 23(a) typicality requirement, "`a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" In re Am. Med. Sys., 75 F.3d at 1082 (quoting 1 NEWBERG ON CLASS ACTIONS, § 3-13, at 3-76). Where the same unlawful conduct is alleged to have affected both the named plaintiffs and the class members, varying fact patterns in the individual claims will not defeat the typicality requirement.
*674 Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir.1994).
Here, the putative class alleged a common course of conduct by Behr toward all class members regarding alleged defects in Behr's products and the inadequacies of Behr's product labeling and promotional materials. Thus, the trial court properly concluded that the named plaintiffs' claims were typical in light of the putative class's allegations and it noted that additional representatives could be named if, for instance, an issue of geographical concentration arose.
The trial court also concluded that the putative class met the additional requirements for class certification in CR 23(b). Under CR 23(b)(1)(A),[5] the court found that individual lawsuits could produce differing standards of conduct that could make it difficult for Behr to know whether it should alter its labeling and/or its products. But Behr failed to challenge this basis for the trial court's certification decision until its reply brief and, thus, we decline to consider that challenge. See RAP 10.3(c); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
Behr does challenge the trial court's conclusion that under CR 23(b)(3),[6] the suit was best maintained as a class action because of the numerous fundamental common factual and legal issues among the class members, the finite number of individual issues, the relatively small nature of the individual claims, and the potential to bind all similarly situated persons and Behr. The court noted that it was not aware of any other relevant pending litigation, that it had jurisdiction to litigate the claims of all similarly situated class members, and that no unique management difficulties were likely to result from maintaining the suit as a class action.
Behr contends that product liability cases involving "multiple disparate incidents," rather than a single incident such as an airplane crash, "defy common adjudication." Behr's Br. at 77. But there is tenable, reasonable support for the court's conclusion that common issues predominated over individual issues. The core of the putative class's claims was that Behr's products were defective and that Behr's product labeling was inadequate. In essence, the putative class claimed that Behr had engaged in a "`common course of conduct'" toward all potential class members in the formulation, manufacture, and sale of the challenged products. Brown, 6 Wash. App. at 255, 492 P.2d 581 (quoting Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir.1964)).
Moreover, courts have generally rejected a per se rule against product liability class actions in favor of a case-by-case application of class certification requirements. See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1230-31 (9th Cir.1996). And the cases Behr cites contain other fatal impediments to class certification, most notably, choice of law issues in nationwide class actions. See, e.g., In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 341-42 (D.N.J. 1997) ("principal reason" for denying certification to nationwide class was plaintiffs' failure *675 to propose a plan to try claims arising under differing laws of the 50 states); In re Masonite Corp. Hardboard Siding Prods. Liab. Litig., 170 F.R.D. 417, 421-24 (E.D.La. 1997) (rejecting certification of nationwide class based in part on varying state laws); Osborne v. Subaru of Am., Inc., 198 Cal. App.3d 646, 243 Cal.Rptr. 815, 822 (Cal.Ct. App.1988) (rejecting certification of nationwide class in part because of the "myriad diverse state law rules" plaintiffs' claims raised). But see Gross v. Johnson & Johnson-Merck Consumer Pharm. Co., 303 N.J.Super. 336, 696 A.2d 793, 796-800 (Law Div.1997) (declining to certify nationwide class action challenging allegedly false advertising as individual issues predominated over common ones).
In deciding whether common issues predominate over individual ones, the court is engaged in a "`pragmatic' inquiry into whether there is a `common nucleus of operative facts' to each class member's claim." Clark v. Bonded Adjustment Co., 204 F.R.D. 662, 666 (E.D.Wash.2002) (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRACTICE & PROCEDURE § 1778 (2d ed.1986)). That class members may eventually have to make an individual showing of damages does not preclude class certification. Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir.1975); Osborne, 243 Cal.Rptr. at 821.
Here, the putative class members' claims arose from a common nucleus of operative facts involving the formulation, manufacture, and sale of Behr's allegedly defective products. Thus, given this state's liberal interpretation of CR 23, the trial court did not abuse its considerable discretion by finding that the putative class had satisfied the CR 23(b)(3) predominance requirements and by certifying this class under that provision. See Lacey, 128 Wash.2d at 47, 905 P.2d 338; Brown, 6 Wash.App. at 256, 492 P.2d 581.

II. DEFAULT JUDGMENTDISCOVERY VIOLATIONS
Although Behr acknowledges its discovery violations, it challenges the trial court's choice of a default judgment as the appropriate sanction. Behr argues that (1) the class failed to establish substantial prejudice resulting from the discovery violations; (2) the trial court used an erroneous definition of "willfulness" and there was no evidence of deliberate misconduct on Behr's part; (3) the trial court failed to adequately consider alternative sanctions; and (4) the trial court denied Behr due process by failing to give it an opportunity to remedy its discovery transgressions.
CR 37(b)(2)[7] authorizes a variety of sanctions for discovery violations, from the exclusion of evidence to a default judgment. We review the use of sanctions under an abuse of discretion standard that gives the trial court wide latitude in determining appropriate sanctions, reduces trial court reluctance to impose sanctions, and recognizes that the trial court is in a better position to determine this issue. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 338-39, 858 P.2d 1054 (1993) (Fisons).
When the trial court selects one of the "`harsher remedies'" under CR 37(b),
it must be apparent from the record that the trial court explicitly considered whether *676 a lesser sanction would probably have sufficed,' and whether it found that the disobedient party's refusal to obey a discovery order was willful or deliberate and substantially prejudiced the opponent's ability to prepare for trial.
Burnet v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997) (quoting Snedigar v. Hodderson, 53 Wash.App. 476, 487, 768 P.2d 1 (1989), rev'd in part sub nom., Snedigar v. Hoddersen, 114 Wash.2d 153, 786 P.2d 781 (1990)). Further, as a default judgment for discovery violations raises due process concerns, the court must first find willfulness and substantial prejudice. White v. Kent Med. Ctr., Inc., 61 Wash.App. 163, 176, 810 P.2d 4 (1991); Assoc. Mortgage Investors v. G.P. Kent Constr. Co., 15 Wash.App. 223, 227-28, 548 P.2d 558 (1976).
A. SUBSTANTIAL PREJUDICE
In an effort to show that its violation caused minimal prejudice to the class's case, Behr argues that the class had already been pursuing the possible chemical incompatibility/instability of Behr's products, the very issue raised by the undisclosed information. The trial court disagreed, explaining:
I conclude that the discovery violations complained of suppressed evidence that was relevant, because it goes to the heart of the plaintiffs' claims, and it supports them. It's relevant in that it goes to the heart of the defenses raised by Behr, because it undermines them. The discovery violations here prevented the plaintiffs from doing what the law really allows them to do, and that's to follow up on leads from developed facts. They were off in one direction when they should have been working in another, and the only reason is they didn't know that the other existed.
....
The evidence that has been discovered and the implications from that evidence that has been discovered in the last week or so is highly important. As I said, it bolsters the plaintiffs' case, it undermines positions that the defendant has taken, it suggests that the plaintiffs' problems may have a more particular cause, some chemical instability in the product that was marketed by Behr, it casts doubt on the discovery that has gone on before, it affects the work that the experts have done, at least the plaintiffs' experts.
.... Perhaps nothing in the discovery of this case is as important as what was not disclosed.
Report of Proceedings (RP) (5/15/00) at 3, 5.
Behr attempts to show minimal prejudice by pointing to five snippets from the record. But testimony from one of the class's experts indicates that the class's central, if not sole, theory was that Behr's products failed because of an inadequate amount of mildewcide, rather than because of an incompatibility:
5. It is my opinion that the Behr products failed due to improper chemical formulation, namely, an inadequate amount of mildewcide. This opinion is based upon my expertise, my inspection of the subject homes and my review of the chemical formulas for Behr's products Nos. 12 and 13.
....
7. The single factor common to all of these homes is the lack of an adequate amount or type of mildewcide in Behr's products, a deficiency noted in Mr. Bailey's [Behr's expert] declaration when he stated that one of the causes of the product failure was "the failure of the plaintiffs to add additional mildewcide."
CP (Packet 3) at 321-22. See also CP (Packet 4) at 447 (class's expert noted that "it is my opinion that Behr ... failed to use sufficient concentrations of the Troy Chemical mildewcides in its formulations of the Super Liquid Raw-Hide and Natural Seal Plus products prior to September 1998" but he also stated that "[a]fter September, 1998, the product formulations used by Behr combined a mildewcide and a ultra-violet inhibitor which were not compatible"); CP (Packet 5) at 673 ("I'm of the opinion that the mildewcide in the Behr coating is inadequate to protect the coating against growth of mildew on the surface and within the coating as well."); CP (Packet 8) at 1504 (stating that Behr's products probably would have performed better with additional mildewcide but also noting that "there is this incompatibility issue").
*677 Further, even if the class was attempting to pursue the possibility of a chemical incompatibility/instability issue, that does not alleviate the prejudice Behr caused by withholding information establishing that theory of causation. Thus, there was reasonable evidentiary support for the trial court's finding that Behr's failure to disclose evidence caused the class substantial prejudice.
B. "WILLFUL"
Behr also contends that its failure to disclose this information in discovery was not willful but, rather, resulted from a misunderstanding of its discovery obligations. It argues that the trial court erroneously defined "willful" as "without reasonable excuse" instead of as "deliberate misconduct."
The "without reasonable excuse" definition of "willful" comports with earlier case law. See, e.g., Snedigar, 114 Wash.2d at 169, 786 P.2d 781 ("A violation of the discovery rules is willful if done without reasonable excuse."); Woodhead v. Disc. Waterbeds, Inc., 78 Wash. App. 125, 130, 896 P.2d 66 (1995) (same); Rhinehart v. Seattle Times Co., 51 Wash. App. 561, 577, 754 P.2d 1243 (1988) (same); Gammon v. Clark Equip. Co., 38 Wash.App. 274, 280, 686 P.2d 1102 (1984) (same), aff'd, 104 Wash.2d 613, 707 P.2d 685 (1985). But Behr, citing Burnet, 131 Wash.2d at 495-98, 933 P.2d 1036, contends that the state supreme court recently rejected this definition in cases involving harsher sanctions such as default.
Although Burnet's use of the word "willful" is ambiguous, the state supreme court has recently defined the term clearly and reaffirmed past usage. See Rivers v. Wash. State Conference of Mason Contractors, 145 Wash.2d 674, 686-87, 41 P.3d 1175 (2002). In reviewing the trial court's dismissal of the plaintiff's complaint with prejudice as a sanction for discovery violations, the Rivers court stated: "A party's disregard of a court order without reasonable excuse or justification is deemed willful." 145 Wash.2d at 685, 687, 41 P.3d 1175 (citing Woodhead, 78 Wash.App. at 130, 896 P.2d 66). Consequently, the trial court applied the correct standard here.
Behr does not dispute that it violated the discovery order without reasonable excuse. And, further, the trial court rejected Behr's claim that the undisclosed information was unknown "because [Behr's] institutional memory either forgot or that it failed to learn." RP (5/15/00) at 11.
The trial court noted that it was Behr's responsibility to set up a workable discovery system and said that it did not believe Behr's explanations for that system's failures: "Under the light of all of these circumstances, the notion that negligence or inadvertence was responsible here simply aren't believable. They're incredible explanations." RP (5/15/00) at 17. Thus, the court concluded, "Behr willfully and Behr deliberately and without reasonable justification concealed highly relevant evidence, concealed evidence that the plaintiffs requested and that they should have disclosed, and all recent case law says that I am obligated to impose appropriate sanctions." RP (5/15/00) at 21.
Behr further asserts that the trial court erred in denying its request to consult with independent counsel after the class produced evidence suggesting that Behr's counsel, not the corporation, was responsible for the discovery violations. Behr's attorneys first raised their potential conflict of interest and moved to withdraw from the case on May 9. Approval of the motion would necessarily have led to a trial continuance.
The class responded that it was not seeking sanctions against Behr's attorneys and it ultimately withdrew all evidence related to the attorneys' actions. Behr's attorneys then asked to consult with independent counsel given the possible conflict of interest. Behr's general counsel wanted Evan Schwab, other counsel for Behr, to contact Behr's president in California. But Schwab was in the hospital following a heart attack.
Given these facts, the trial court's decision to proceed with the evidentiary hearing but to terminate it if the conflict issue arose again was reasonable. As the trial court explained: "You're presenting me with a Hobson's choice here, maybe. It appears to me that the issue [of a conflict of interest] has been withdrawn.... [T]he system of justice would not function whatsoever if every *678 time an ethical issue came up, the attorney said, `I withdraw.'" RP (5/9/00, Vol.I) at 99-100.
Behr's attorneys did not raise the issue again after May 9. Thus, this record does not show either that the trial court refused to allow Behr to consult independent counsel or that it abused its discretion in finding that Behr's discovery violations were willful.
C. ALTERNATIVE SANCTIONS
Behr also contends the trial court failed to "adequately" consider lesser alternative sanctions that would have placed the class in the position it would have been in absent the discovery violations and would have also punished Behr for its transgressions.
The trial court considered alternative sanctions and rejected each in favor of a default judgment. It explained its reasons: (1) a continuance would be unfair to the class and would not punish Behr; (2) financial sanctions do not "rectify a wrong; it just sets a price on it. It punishes the defendant to some extent, but it doesn't determine the plaintiffs' damages. It doesn't do anything to resolve the reason the plaintiffs came to court in the first place," RP (5/15/00) at 23; (3) striking witnesses or testimony could "add some complications for the plaintiffs in proving their cases. And it certainly doesn't give plaintiffs the effect of the evidence that they were entitled to," RP (5/15/00) at 25; (4) striking Behr's affirmative defenses would result in the plaintiffs "still [having] to prove liability without the opportunity to explore these suppressed and very positive leads. This evidence, if they had a chance to develop it, may very well help to prove liability, but by striking the affirmative defenses they would be deprived of that opportunity," RP (5/15/00) at 25; and (5) any other sanctions would not fully address the "goals of deterrence, punishment, compensation, and education," RP (5/15/00) at 26. The court then summarized its reasons for selecting the default judgment sanction:
When you consider the willfulness of the violation, it's the only appropriate exercise of discretion when you consider the centrality of the suppressed information, when you consider its interim nature, and that to follow up on it would require time, time that could have been allowed had it been disclosed when it should have been.
Default is the only viable exercise of discretion when you consider the multiple, again, serious prejudice that this has caused to the plaintiffs, and when you consider the impacts of the violations on this Trial Court, and on the administration of justice.
RP (5/15/00) at 28.
As the trial court properly set forth its reasons on the record and those reasons are neither unreasonable nor untenable, its decision to grant the default judgment was within its broad discretion. See Burnet, 131 Wash.2d at 494, 933 P.2d 1036 (trial court has broad discretion in selecting sanction but it must have considered on the record whether lesser sanction would "probably" have sufficed).
D. DUE PROCESS
Finally, Behr asserts that due process considerations required the trial court to give it an opportunity to cure its discovery transgressions before entering the default judgment. "It seems clear that there is a constitutional due process limitation to grant of a default judgment as a contempt sanction imposed for violation of a discovery order." Assoc. Mortgage, 15 Wash.App. at 227, 548 P.2d 558 (citing Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257 (9th Cir.1964)).
The cases addressing due process limitations hold that the trial court cannot "deny to defendant the right to defend the action as `mere punishment.'" Mitchell v. Watson, 58 Wash.2d 206, 216, 361 P.2d 744 (1961) (quoting Hammond Packing Co. v. Arkansas, 212 U.S. 322, 350, 29 S.Ct. 370, 53 L.Ed. 530 (1909)). Due process is satisfied, however, if, before entering a default judgment or dismissing a claim or defense, the trial court concludes that there was "`a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices the opponent's ability to prepare for trial.'" White, 61 Wash.App. at 176, 810 P.2d 4 (quoting Assoc. Mortgage, 15 Wash. App. at 228-29, 548 P.2d 558).
*679 Here, the trial court's pre-trial scheduling order required the completion of discovery by February 28, 2000. After the class discovered the undisclosed information several days before the trial date, the trial court held a three-day evidentiary hearing and it then provided a detailed oral ruling addressing the prejudice to the class and the judicial system, the possibility of lesser sanctions, and the willfulness of Behr's violations. This satisfied due process requirements.
Further, if the court had granted Behr additional time to "correct" the discovery violations, it would in essence have rewarded Behr with a second chance to provide discovery that the class had already properly requested and it would have been meaningless, as by then the class had obtained the materials.

III. POST-DEFAULT DAMAGES TRIAL
Behr argues for reversal of the damage verdict, claiming that the trial court erroneously (1) denied it an opportunity for meaningful cross-examination and precluded Behr's damages-related defenses; (2) rejected its jury instructions and gave several improper instructions; (3) incorporated the class's special verdict form; and (4) commented on the evidence.
After the trial court ruled that the case would "proceed [only] on the issue of damages," the parties disagreed as to the scope of the trial.[8] RP (5/15/00) at 29. The trial court had noted that "[t]here may be some issues that would necessarily have to be discussed in the damages phase that may otherwise have been discussed in the liability phase. I mean, if it's the defendant's position that this substance can be wiped off, the mildew can be wiped off with water and bleach, I think that goes to damages, so there may be some talk like that." RP (5/16/00) at 56. But the trial court later limited the trial to the amount of damages, excluded evidence of the class members' failure to mitigate damages, and excluded two Behr experts because of Behr's failure to adequately and timely disclose them.
If the allegations aren't given ... the status of being established, then we are going back and opening up issues that have some bearing on those tests that were never disclosed. This jury is here to determine the amount of damages, and the allegations in the complaint are that the product needs to be removed, the defective product needs to be removed from the home, and that's what this jury will entertain, the damages for that.
RP (Trial, Vol.I) at 51-52.
The scope of the damages trial arose again during the testimony of the class's first witness, one of the class representatives, as the trial court struggled with the appropriate bounds of cross-examination given the default order. The court noted that the "effect of the default judgment ... is to determine that these plaintiffs are entitled to have the product removed from the house, and that is established." RP (Trial, Vol.I) at 156-57. The court ultimately made it clear that it had ruled as a matter of law, by way of the default order, that the class had suffered damages and that the only cure was removal of the products from the class members' homes.
A. LIMITATION OF DAMAGES-RELATED DEFENSES
Behr also challenges the trial court's rulings at the damages trial. Specifically, it focuses on the court's limitation of cross-examination and its jury instruction to disregard certain evidence. Behr claims trial court error in (1) limiting its cross-examination of class witnesses and excluding evidence of the class members' failure to mitigate damages; (2) instructing the jury that it *680 could not consider evidence of the class members' failure to mitigate damages; (3) rejecting Behr's proposed instructions; and (4) using the class's special verdict form, particularly the matrices that allegedly resolved a disputed issue of fact, namely, whether there were other less costly remediation methods.
The class asserts that the trial court's evidentiary and instructional rulings were in response to Behr's other discovery violations regarding expert witness disclosures. But the trial court's comments throughout the damages trial indicate its belief that the language of the default judgment alone precluded any evidence of mitigation or alternative remedies.
A default judgment constitutes an admission of all factual allegations necessary to establish the plaintiff's claim for relief. In re Indus. Diamonds Antitrust Litig., 119 F.Supp.2d 418, 420 (S.D.N.Y.2000). The default does not, however, admit any conclusions of law contained within the complaint or the amount of damages. In re Indus. Diamonds Antitrust Litig., 119 F.Supp.2d at 420. See also Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). Thus, following default, the trial court must conduct a reasonable inquiry to determine the amount of damages. CR 55(b)(2); Credit Lyonnais Sec., 183 F.3d at 155.
Here, the trial court elected to conduct this reasonable inquiry by way of a jury trial where Behr could cross-examine witnesses, present evidence and argument, and have jury instructions on issues relevant to the amount of damages. But it limited the damage evidence to cost of cure by complete removal of the product and application of new coating.
Behr contends it had the right to present evidence of and have corresponding jury instructions on mitigation or alternative remedies. See, e.g., Payne v. Dewitt, 1999 OK 93, 995 P.2d 1088, 1091, 1094-95 (Okla.1999) (trial court's default order on liability was appropriate but the court erred in precluding defendant from cross-examining witnesses, objecting to the introduction of evidence, or otherwise participating in the bench hearing on damages); B. Finberg, Annotation, Defaulting Defendant's Right to Notice and Hearing as to Determination of Amount of Damages, 15 A.L.R.3d 586, 607 (1967) (citing cases discussing the nature and sufficiency of hearing on damages). See also Kiemele v. Bryan, 3 Wash.App. 449, 452, 476 P.2d 141 (1970) (each party is entitled to have its theory of the case presented to the jury by proper instructions when there is evidence to support them). Superficially, Behr's argument appears plausible. But upon closer analysis, the rationale for the trial court's rulings becomes apparent.
If the court had allowed Behr to present evidence of mitigation or of alternative methods of cure, such as washing mildew from the structures, the class would have had to respond by explaining why these measures would not have been adequate. Logically, this would have required an explanation of the chemical properties of the allegedly defective Behr products. In turn, this would have opened the door to a defense about the composition of the products. The jury then would have had to consider essentially the same evidence and resolve the same issues that the trial court intended to exclude when it granted the default judgment as to liability. Further, Behr's discovery violations limited the class's access to information that might have been helpful in responding to mitigation-alternative remedy contentions.
Thus, although the trial court's rulings appear harsh, they inevitably flowed from the default judgment. As Behr had a meaningful, if limited, opportunity to produce evidence, cross-examine witnesses, and present argument as to the costs of the designated cure, it has not shown a due process violation.
B. COMMENT ON EVIDENCE
Behr also challenges instructions nos. 5, 6, and 7, and the trial court's special verdict form, asserting that they were prohibited comments on the evidence.
*681 To prevent the trial judge's opinion from influencing the jury's verdict, Article IV, § 16 of the Washington Constitution prohibits the court from commenting on the evidence. State v. Deal, 128 Wash.2d 693, 703, 911 P.2d 996 (1996); State v. Lane, 125 Wash.2d 825, 838, 889 P.2d 929 (1995). A statement is a comment on the evidence "if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." Lane, 125 Wash.2d at 838, 889 P.2d 929. But an instruction that does no more than accurately state the relevant law is not a comment on the evidence. Hamilton v. Dep't of Labor & Indus., 111 Wash.2d 569, 571, 761 P.2d 618 (1988).
Behr specifically alleges that the instructions commented on the evidence by telling the jury (1) that the "Court has found as a matter of law" that "the Plaintiffs and the class members have sustained damages to their exterior wood surfaces," (instruction 5); (2) to disregard evidence or argument regarding mitigation (instruction 6); and (3) that the damages could be remedied only by "removing the defective Behr products and restoring the underlying wood surfaces" (instruction 7). CP (Packet 10) at 1770-72.
The instructions and the verdict form clearly reflect the trial court's opinion as to issues of fact that Behr disputedthe class's failure to mitigate damages and the appropriate remedy. But, as we discussed above, the trial court properly resolved these issues in its default judgment and, thus, they were not disputed issues at trial. As the instructions reflect the law of the case, they were not improper comments on the evidence. See Hamilton, 111 Wash.2d at 571, 761 P.2d 618.

IV. CPA TREBLE DAMAGES HEARINGDUE PROCESS
Following a post-verdict hearing, the trial court awarded treble damages under the CPA to the class representatives, concluding that this would further plaintiffs' financial rehabilitation, would encourage citizens to bring CPA actions, would serve as a deterrent to other manufacturers and sellers, and would punish Behr for its unfair and deceptive business practices. Behr challenges this post-verdict hearing, contending that the court's procedure denied it due process.
At the CPA damages hearing, the trial court allowed the class to introduce deposition excerpts from 16 witnesses, two declarations, and demonstrative exhibits. Behr complains that this reliance on documentary evidence prevented it from cross-examining witnesses and that there was not a proper evidentiary foundation for the evidence. It also challenges the court's reliance on evidentiary submissions provided after the CPA damages hearing. Finally, Behr argues that it did not have adequate notice because the class served its exhibits on Behr the day before Behr's response was due, the class served other exhibits the morning of the hearing, and the class submitted evidence after the hearing.
Procedural due process is a flexible concept; its exact contours are determined by the particular situation but the fundamental requirement "is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333-34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). As in the damages jury trial, Behr was entitled to a meaningful opportunity to participate in the hearing on the issue of treble damages under the CPA. See Credit Lyonnais Sec., 183 F.3d at 155 (after default, allegations in complaint with respect to amount of damages are not deemed true); Payne, 995 P.2d at 1094-95. The question, then, is whether the CPA treble damages hearing based on documentary evidence denied Behr this opportunity.
The default judgment complicates the situation here. Had there been a trial on the merits, Behr could have defended against the allegations of CPA violations in that forum. Then at a subsequent hearing, the trial court could have considered the evidence adduced at trial and heard argument from the parties before making its discretionary decision on treble damages.
But because the CPA violations were established by default, Behr lost this opportunity. *682 And in contrast to the general damages, CPA damages depend on facts relevant to the CPA violations. Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wash. App. 553, 565, 825 P.2d 714 (1992).
Nonetheless, the trial court has substantial discretion in determining the format of any proceeding to assess the amount of damages following default. See CR 55(b)(2). Here, there is no indication that the format the court selected precluded Behr from offering evidence or rebutting the class's evidence and, in fact, Behr did submit an affidavit from its attorney with attachments. Without some additional showing, Behr has not established that the absence of live testimony deprived it of due process.
Nor do we find a due process violation arising out of the class's additional evidentiary submissions after the hearing. The trial court had requested clarification of several issues arising out of the class's proposed findings of fact. Although the class took this clarification request as an opportunity to offer additional evidence, there is no indication that the court discouraged Behr from responding to these additional submissions and, in fact, Behr did so.
Of greater concern is the trial court's failure, over Behr's objection, to consider the admissibility of the class's evidence under the evidence rules. ER 1101 provides that the evidence rules "apply to all actions and proceedings in the courts of the state of Washington," with several exceptions that do not apply here. Behr asserts that the trial court allowed evidence without "a proper evidentiary foundation" and, thereby, it relied on "exhibits that were, for the most part, unauthenticated hearsay." Behr's Br. at 72-73.
At the evidentiary hearing, the class introduced 47 exhibits composed of deposition excerpts, labeling and promotional material for Behr's products, and other documents supporting its request for treble damages, such as declarations, photographs, and product information. Behr objected to this evidence, stating "that there is no evidence, there is no foundation, there is no basis for the argument of counsel. And, in fact, counsel is testifying beyond those exhibits and documents to which they are referring." RP (6/13/00) at 42.
The crux of Behr's evidentiary objection was that the class had not laid a proper foundation to admit its exhibits and that the court should not have used this evidentiary hearing procedure to determine both the existence of the CPA violations and the class's entitlement to treble damages' Behr argued:
[Behr] objects to each and every exhibit. They were not offered at trial. The trial has been concluded. The exhibits themselves in the notebook were provided to us on Thursday afternoon, after four o'clock. Exhibits 24 through 48 were provided to us this morning. And we believe that there has been no foundation for any of the exhibits. They are not evidence, and they should not be considered by the Court.
RP (6/13/00) at 71-72. Behr later addressed the evidence and supporting affidavit that it had provided, stating that it "did not [provide the evidence] as a means of validating this process and this procedure. I have not submitted that evidence in order to rebut the claims of the plaintiffs." RP (6/13/00) at 88. Rather, Behr asserted that its evidence was merely an offer of proof intended to demonstrate what the evidence at trial would have shown. The trial court considered the class's evidence over Behr's objection.
Behr has not supported this claim of error with adequate argument or citations to the record. Although Behr objected to the evidence below, it made sweeping objections to all of the class's evidence without explaining its specific objections to the trial court. Similarly, on appeal, Behr fails to support its claim that the trial court "relied on exhibits that were, for the most part, unauthenticated hearsay," with any specific argument or citation to legal authority as to any individual exhibit. Behr's Br. at 73. Thus, we do not address this claim further as Behr has failed to demonstrate error. See RAP 10.3(a)(5); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
Regarding Behr's contention that it did not receive reasonable notice of the class's evidence, Behr does not explain why six days was insufficient nor does it indicate that it *683 asked for and was denied additional time to respond to the materials the class submitted the morning of the hearing. Thus, it has failed to show a due process violation.

V. APPEARANCE OF UNFAIRNESSEASTER DINNER
Behr contends that the trial judge erred in declining to recuse himself after he disclosed that he had inadvertently had Easter dinner at one of the class representative's homes shortly before trial. Behr argues that the trial judge applied an inappropriate "actual fairness" standard rather than an objective "appearance of unfairness" standard. Behr's Br. at 84.
In an in-chambers conference before jury voir dire, the trial judge explained:
We have a neighbor that's building a house. My wife and another neighbor put together a moving party, because we have horse trailers, and moved them out on Easter. And after we moved, it was about 1:30 or so, he said, Bill Meredith, my neighbor said, "My sister's cooking Easter dinner, and she says she's got enough for the moving party," so we all went over to her house to eat. She [the neighbor's sister] was introduced to me as Tamara, her husband was Mark. I'd seen him before, never met her before. And while we were over there, I saw some face and the name "Feeser." They didn't tell me their last names when I was introduced to them. And I came back, and as I looked at the headline [of the case], I realized that I had dinner at Tamara and Mark Feeser's house.
There was not a mention of this lawsuit at all, but I thought I better lay that out there. Any comments, questions?
RP (5/2/00, Chambers Conf.) at 4-5. Behr objected but did not formally ask the trial judge to recuse himself at that time.
The next day Behr moved to recuse the judge. The judge declined, stating:
As far as Easter dinner, ... I don't believe that it's such that would cause me to be disqualified or that I should recuse myself. As I said, I wasn't even sure that the person was a party to the case until I went back and saw the caption of the case, although when I saw the name there I had some indication that the person may be involved in the case. I didn't know whether it was as a witness or what. Nothing was mentioned about it. I don't even know that they knewas I say, I don't even know if they knew that I was coming. I had nothing to do with setting up the moving arrangements; that was my wife and a neighbor.
.... And I had never met, to my knowledge, [my neighbor's] sister, Tamara, although I had met, apparently, Mr. Feeser, but didn't know his name prior to that. So I guess that's just going to be a matter on the record. I will decline to recuse myself at this point.
RP (5/3/00, Motions in Limine) at 10-11.
We review a trial court's recusal decision for an abuse of discretion. Wolfkill Feed & Fertilizer Corp. v. Martin, 103 Wash. App. 836, 840, 14 P.3d 877 (2000). "Due process, the appearance of fairness, and Canon 3(D)(1) of the Code of Judicial Conduct require disqualification of a judge who is biased against a party or whose impartiality may be reasonably questioned." Wolfkill, 103 Wash.App. at 841, 14 P.3d 877 (citing State v. Dominguez, 81 Wash.App. 325, 328, 914 P.2d 141 (1996)). The test to determine whether a judge's impartiality might reasonably be questioned is an objective one that "assumes that `a reasonable person knows and understands all the relevant facts.'" Sherman v. State, 128 Wash.2d 164, 206, 905 P.2d 355 (1995) (quoting In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1313 (2d Cir.1988)).
Here, neither the judge nor the Feesers discussed the case at the Easter dinner and the judge did not know the homeowners' connection to the case until he later read the caption on court documents. It is unlikely that a reasonable person, knowing these facts, would question the judge's impartiality; thus, the judge did not abuse his discretion in declining to recuse himself. See, e.g., Wolfkill, 103 Wash.App. at 838-41, 14 P.3d 877 (trial judge did not abuse discretion by declining to recuse where a party violated the mandatory arbitration rules, *684 which prohibited any reference to the arbitration in any pleading or other statement in a trial de novo; court said it would ignore the reference and act impartially).

VI. CPA ATTORNEY FEES AND COSTS
Behr challenges the trial court's award of attorney fees and costs to the class under the CPA, asserting that the court (1) improperly applied a pre-and post-default lodestar multiplier; and (2) failed to segregate attorney time spent on the CPA claims from time spent on other claims.
We review the trial court's award of attorney fees for an abuse of discretion. Travis v. Wash. Horse Breeders Ass'n, Inc., 111 Wash.2d 396, 410, 759 P.2d 418 (1988). In determining reasonable attorney fees, the trial court must first calculate the "lodestar" figure. Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 597, 675 P.2d 193 (1983). This figure represents the number of hours reasonably expended (discounting hours spent on unsuccessful claims, duplicated effort, and otherwise unproductive time) multiplied by the attorney's reasonable hourly rate. Bowers, 100 Wash.2d at 597, 675 P.2d 193. In determining the attorney's reasonable hourly rate, the trial court may consider the skill level the litigation requires, the time limitations the litigation imposes, the size of the potential recovery, the attorney's reputation, and the undesirability of the case. Bowers, 100 Wash.2d at 597, 675 P.2d 193.
After the trial court has calculated the lodestar figure, it may make adjustments to reflect factors not already considered in reaching the figure, including the contingent nature of success and the quality of the work performed. Bowers, 100 Wash.2d at 598, 675 P.2d 193. The court should consider the contingent nature of success as of the outset of the litigation but should not apply the risk factor to hours expended after recovery is assured. Bowers, 100 Wash.2d at 598-99, 675 P.2d 193. The quality of the work supports an adjustment to the lodestar figure only when the representation is unusually good or bad considering the skill level normally expected of an attorney with the hourly rate used to compute the lodestar. Bowers, 100 Wash.2d at 599, 675 P.2d 193.
A. LODESTAR MULTIPLIER
Here, the trial court adjusted the lodestar figure upward:

[Findings of Fact]
13. The attorney fees reflect many factors, including the quality of work one may reasonably expect of the attorney. The quality of the work involved, especially considering the difficulties and complexity of the issues involved, the several detours occasioned by the defendant, and the full recovery obtained by the lawyers on behalf of the Plaintiff class, was exceptional which demonstrates exceptional circumstances in this case which should be a factor in an upward adjustment of the lodestar. Since the quality of work expected is a substantial consideration in the setting of attorney fees, it is a lesser consideration than the risk undertaken by the attorneys in determining an upward lodestar adjustment.

....

[Conclusions of Law]
3. The appropriate lodestar adjustment upward is 1.5 for all hours of work through May 15, 2000 [pre-default] because of the exceptional circumstances and the risks involved. The lodestar adjustment upward after May 15, 2000 [post-default] is 1.2 because of the exceptional circumstances involved.
CP (Packet 16) at 2662, 2665-66 (emphasis added). The court later made oral statements suggesting that the adjustments were based primarily, if not solely, on the risk involved:
[T]he more I thought about this the more I felt that the most important aspect of the Lodestar multiplier was the risk involved and I felt that was a great risk in this case, all things considered. And that although the services rendered by the attorneys was exceptional, one would expect that when one is paying attorneys fees that anybody *685 would blush [sic] except for another attorney. The attorney fees are taken into consideration. The quality of service is to be expected.
RP (7/27/00) at 56 (emphasis added).
Behr challenges the use of the lodestar multiplier for both the pre- and post-default periods based on the "exceptional circumstances" standard. Behr's Br. at 89.
Behr first challenges the use of a pre-default multiplier, arguing that the trial court employed an unrecognized and inappropriate "exceptional circumstances" standard. Behr's Br. at 89. But the trial court stated that it was granting the pre-default adjustment "because of the exceptional circumstances and the risks involved." CP (Packet 16) at 2665 (emphasis added). As it was appropriate to make an upward adjustment based on the risk, a risk that Behr does not deny, the trial court did not err in making this adjustment. See Bowers, 100 Wash.2d at 598-99, 675 P.2d 193.
As to the post-default multiplier, the trial court granted the 1.2 multiplier "because of the exceptional circumstances involved." CP (Packet 16) at 2666. The meaning of "exceptional circumstances" is unclear and, thus, we cannot determine if the trial court intended to base the adjustment on the quality of the work, the contingent nature of success, or some other factor. The class asserts that "exceptional circumstances" clearly refers to the "high-quality services" the class's attorneys provided. Class's Br. at 76. But the trial court stated that it took the quality of service into account in the hourly rate.
Further, given the default judgment as to liability and the limited nature of the post-default damages trial, the risk involved would not support a post-default upward adjustment. See Bowers, 100 Wash.2d at 598-99, 675 P.2d 193. Because we cannot engage in a meaningful review of the trial court's post-default adjustment of the lodestar multiplier on this record, we reverse and remand this portion of the award for clarification of its basis and further adjustment if appropriate.
B. SEGREGATION
Behr also challenges the trial court's conclusion that the claims were too intertwined to segregate the time spent on the CPA claims from other claims.
In awarding attorney fees under the CPA, the trial court "must separate the time spent on those theories essential to the CPA and the time spent on legal theories relating to the other causes of action." Travis, 111 Wash.2d at 411, 759 P.2d 418. See also Nordstrom, Inc. v. Tampourlos, 107 Wash.2d 735, 744, 733 P.2d 208 (1987) ("These [attorney] fees should only represent the reasonable amount of time and effort expended which should have been expended for the actions of [the defendant] which constituted a Consumer Protection Act violation."). Thus, the Travis court rejected the trial court's conclusion that the CPA, warranty, and mutual mistake claims "`overlapped and were [too] intertwined'" to segregate the time spent on each and that "some basic facts were essential to each cause of action." 111 Wash.2d at 411, 759 P.2d 418. The Travis court noted that even though a number of fundamental facts were essential to every aspect of the lawsuit, the law pertaining to each claim differed and, thus, the legal theories attaching to these fundamental facts differed. 111 Wash.2d at 411, 759 P.2d 418.
Here, the trial court's reasoning is strikingly similar to the reasoning of the trial court in Travis:
7. The Court cannot rationally, reasonably or logically separate out work on other issues from the Consumer Protection Act issues. These issues are intertwined. The work done to prove the product defect, the breach of warranties and the damage claims was necessary and, in fact, essential, to the establishment of the Consumer Protection Act claims.
CP (Packet 16) at 2661. The class disputes Behr's assertion that the trial court did not properly segregate the time spent on the CPA issues from other issues, pointing to the 139 hours the court did segregate.
But the trial court, even while segregating some hours, explicitly stated that it could not separate the CPA issues from the *686 other issues in the case. Regardless of the difficulty involved in segregation, the Travis court made it clear that the trial court has to undertake the task. See 111 Wash.2d at 411, 759 P.2d 418. See also Fisher Prop., Inc. v. Arden-Mayfair, Inc., 106 Wash.2d 826, 849-50, 726 P.2d 8 (1986) (as attorney fees must be authorized by statute, agreement, or ground of equity, it would be unjust to allow recovery of all attorney fees "because of complexity"). Thus, we reverse and remand the entire CPA attorney fees award for the trial court to either undertake the appropriate segregation or to clarify its order if it actually conducted the segregation.

VII. THE CLASS'S CROSS-APPEAL CPA TREBLE DAMAGES TO CLASS MEMBERS
The class cross-appeals the trial court's refusal to award treble damages to the represented class members, arguing that the court erroneously concluded that the CPA only authorizes such an award to the class representatives. The class contends that the court's interpretation is contrary to the plain language of the statute and does not comport with the directive to liberally construe the CPA.
The CPA allows for the award of treble damages in the trial court's discretion:
Any person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, ... may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: PROVIDED, That such increased damage award for violation of RCW 19.86.020 may not exceed ten thousand dollars[.]
RCW 19.86.090. Here, the trial court exercised its discretion by awarding treble damages but only to the class representatives:
7. This Court's certification of this action as a class action ... was correct and the criteria of CR 23 have been satisfied, and the purposes of awarding treble damages under RCW 19.86.090 are properly fulfilled by awarding treble damages, up to $10,000, for each representative plaintiff.
8. Treble damages are available, in the court's discretion, under RCW 19.86.090 to those who "bring a civil action" under the Consumer Protection Act. The represented plaintiffs did not bring this action and, therefore, are not eligible for a trebling or increase in damages. However, in the event the court is incorrect in its determination that the represented plaintiffs are not eligible for this benefit, this court would consider some increase warranted under 19.86.090.
CP (Packet 16) at 2653.
Plain and unambiguous statutory language controls the statute's application and, thus, is not subject to statutory construction methods. Harmon v. Dep't of Soc. & Health Serv., 134 Wash.2d 523, 530, 951 P.2d 770 (1998); Rettkowski v. Dep't of Ecology, 128 Wash.2d 508, 515, 910 P.2d 462 (1996). A statute is ambiguous if it is susceptible of more than one reasonable interpretation. Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd., 127 Wash.2d 759, 771, 903 P.2d 953 (1995).
The trial court's interpretation of RCW 19.86.090 does not comport with the plain statutory language. The court interpreted the reference to who may "bring a civil action" as a limitation on who may receive an award of treble damages. But if that language is a limitation, we find it more logical to view it as a limitation on who has standing to bring an action. Reading the statutory language as a whole, if the reference to parties who "bring a civil action" was a limitation, the court would be unable to grant the other forms of relief specified therein to the represented class members.
Although the decision to award treble damages is discretionary, the trial court erred in concluding that it had no discretion as to the represented class members. Thus, on remand the trial court should determine whether to award treble damages to the represented class members.

*687 VIII. ATTORNEY FEES ON APPEAL
The class concludes by requesting its attorney fees on appeal pursuant to RAP 18.1 and RCW 19.86.090. As it is the prevailing party and is entitled to attorney fees on appeal under RAP 18.1, we award reasonable attorney fees in an amount to be determined by the trial court on remand. RAP 18.1(i); Bowers, 100 Wash.2d at 601-02, 675 P.2d 193.
We affirm the trial court rulings certifying the class, granting a default judgment, awarding damages following a jury trial, awarding treble damages under the CPA, and denying Behr's recusal motion. We reverse the CPA attorney fees award and remand for evaluation and findings as to the application of a lodestar multiplier to post-default attorney hours and for segregation of the hours spent proving the CPA violations. We also remand for the trial court's consideration of the class's request for treble damages under the CPA for the represented class members. Finally, we direct the trial court to determine and award an appropriate amount of attorney fees and costs to the class as the prevailing party on appeal.
We concur: MORGAN, P.J., and BRIDGEWATER, J.
NOTES
[1] The trial court granted the class's motion to voluntarily dismiss, without prejudice, three of the counts alleged in its original complaint, including misrepresentation, negligence, and strict liability claims.
[2] When the state and federal rules at issue are substantially similar, this court may look to federal decisions for guidance in interpreting and construing the state rule. Pickett v. Holland Am. Line-Westours, Inc., 145 Wash.2d 178, 188, 35 P.3d 351 (2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2624, 153 L.Ed.2d 806 (2002).
[3] CR 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
[4] In making the initial class certification determination, the trial court takes the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 n. 17 (9th Cir.1975).
[5] CR 23(b)(1)(A) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class[.]
[6] CR 23(b)(3) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:
....
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
[7] CR 37(b)(2) provides in part:

If a party or an officer, director, or managing agent of a party or a person designated under rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under section (a) of this rule or rule 35, or if a party fails to obey an order entered under rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
....
(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;
...
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
[8] In its written default order, the trial court stated that it would hold further proceedings to determine the amount of damages under CR 55(b)(2), which provides:

If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as are deemed necessary or, when required by statute, shall have such matters resolved by a jury. Findings of fact and conclusions of law are required under this subsection.