151 P.3d 1090 (2007)
David WESTON, individually and as representative of a class, Respondents,
v.
EMERALD CITY PIZZA LLC, a Washington corporation d/b/a Pizza Hut; and Does 1-9, Appellants, and
Pizza Hut of America, Inc., a Delaware corporation d/b/a Pizza Hut, Defendant.
No. 34234-1-II.
Court of Appeals of Washington, Division 2.
February 6, 2007.
*1091 Paul Jerome Dayton, Attorney at Law, Daniel Foster Johnson, Short Cressman & Burgess, Seattle, WA, for Appellants.
William B. Aitchison, Attorney at Law, Mark Crabtree, Aitchison & Vick, Inc., Portland, OR, Jeffrey Julius, Aitchison & Vick Inc., Seattle, WA, for Respondents.
ARMSTRONG, J.
¶ 1 Emerald City Pizza, LLC appeals an order granting class certification to all Emerald City Pizza Restaurant general managers who did not receive overtime compensation between October 7, 2001, and December 9, 2005. David Weston, the representative plaintiff, alleged that Emerald City Pizza regularly and invariably requires its restaurant general managers to work long hours for low pay and that, despite the "manager" title, the position is more akin to an overtime-eligible, non-exempt position due to the substantial production-related tasks that the restaurant general managers perform. Because Weston presented no evidence that other managers worked more as production employees than true managers, he failed to show a common work pattern that would justify class certification. Thus, we reverse the order certifying the class and remand for the trial court to decertify the class.

FACTS
¶ 2 Emerald City Pizza (Emerald City) owns and operates approximately 60 Pizza Hut Restaurants in western Washington. David Weston worked for Emerald City as a restaurant general manager from December 2000 to May 2002.
*1092 ¶ 3 Under Emerald City's organizational framework, one general manager oversees each restaurant, and a regional manager, called an "area coach," oversees several general managers. The area coaches report to Emerald City's president. Emerald City classifies its managers as salaried executives, which are exempt from minimum wage and overtime laws. See Former RCW 49.46.010(5)(c) (2002).
¶ 4 After he quit working for Emerald City, Weston filed a complaint against the company alleging violations of the Washington Minimum Wage Act[1] and RCW 49.48.010.[2] Weston alleged that even though he was an exempt manager from December 2000 through May 2002, he spent 80 to 90 percent of his time taking telephone orders, making pizzas, working cash registers, stocking supplies, setting up tables, delivering pizzas, and cleaning the facilities. He argued that given the duties he regularly performed, Emerald City should have classified him as a non-exempt employee and paid him overtime wages. He requested that the trial court certify a class consisting of all current and former managers who had worked for Emerald City since October 7, 2001, claiming that the putative class members had performed similar tasks due to Emerald City's formal and informal policies, practices, and procedures.
¶ 5 The trial court ordered class certification, ruling that Weston satisfied CR 23(a)'s requirements "that questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Clerk's Papers (CP) at 205. The court also stated that the common, overriding legal question is whether managers are exempt from earning overtime.
¶ 6 The principal issue is whether Weston showed that common questions of fact and law existed between all of Emerald City's restaurant managers and, if so, whether his work pattern typified the other managers' work.

ANALYSIS

I. STANDARD OF REVIEW
¶ 7 We review the trial court's class certification decision for an abuse of discretion. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 47, 905 P.2d 338 (1995) (citing Eriks v. Denver, 118 Wash.2d 451, 466, 824 P.2d 1207 (1992)). A trial court abuses its discretion when its decision is "`manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006) (quoting Assoc. Mortgage Investors v. G.P. Kent Constr. Co., 15 Wash.App. 223, 229, 548 P.2d 558 (1976)).
¶ 8 Washington courts liberally interpret CR 23 because the "rule avoids multiplicity of litigation, `saves members of the class the cost and trouble of filing individual suits[,] and . . . also frees the defendant from the harassment of identical future litigation.'" Smith v. Behr Process Corp., 113 Wash.App. 306, 318, 54 P.3d 665 (2002) (quoting Brown v. Brown, 6 Wash.App. 249, 256-57, 492 P.2d 581 (1971)). Accordingly, courts should err in favor of certifying a class since the class is always subject to the trial court's later modification or decertification by the trial court. See Oda v. State, 111 Wash.App. 79, 91, 44 P.3d 8 (2002) (quoting Brown, 6 Wash.App. at 256, 492 P.2d 581). But "[n]otwithstanding the rule of liberal interpretation, . . . the class action rule does not contemplate automatic affirmance whenever a trial court certifies a class." Oda, 111 Wash. App. at 92, 44 P.3d 8. "[A]ctual, [and] not presumed, conformance with Rule 23(a) remains . . . indispensable."[3]Gen. Tel. Co. of *1093 the Sw. v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).
¶ 9 A plaintiff seeking class certification bears the burden of demonstrating that he meets CR 23's requirements. Miller v. Farmer Bros. Co., 115 Wash.App. 815, 820, 64 P.3d 49 (2003) (citing Doninger v. Pac. N.W. Bell, Inc., 564 F.2d 1304, 1311 (9th Cir.1977)). And a court should order class certification only after conducting a "rigorous analysis" to ensure that the plaintiff seeking class certification has satisfied CR 23's prerequisites. Oda, 111 Wash.App. at 93, 44 P.3d 8 (quoting Falcon, 457 U.S. at 161, 102 S.Ct. 2364). A trial court may look past the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law "to make a meaningful determination of the certification issues." Oda, 111 Wash.App. at 94, 44 P.3d 8 (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir.1996)).

II. CR 23 CLASS CERTIFICATION
¶ 10 In Washington, an employer need not pay an employee overtime pay if he is employed in a "bona fide executive . . . capacity." Former RCW 49.46.010(5)(c); RCW 49.46.130(2)(a). The "executive" exemption applies to employees whose salary is $250 per week or more[4] if (1) the employee's "primary duty" is "management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof," and (2) he "customarily and regularly directs the work of two or more other employees therein." WAC 296-128-510(1), (2), (6).
¶ 11 Weston argues that Emerald City unlawfully classified its managers as exempt because the managers mostly perform production work and because area coaches limit the managers' discretion. Emerald City argues that whether it misclassified managers as exempt "depends on the individual employee's allocation of time between `management' and `production' tasks" and the "degree of autonomy and discretion they actually exercised on the job." Br. of Appellant at 17. Emerald City maintains that because the evidence shows that these issues differ between Weston and the putative class members, class treatment is improper.
¶ 12 CR 23(a) provides four prerequisites to class certification. Oda, 111 Wash.App. at 89, 44 P.3d 8. The rule states that
[o]ne or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
CR 23(a). Additionally, a class action must satisfy one of CR 23's requirements. The parties in this case focus exclusively on CR 23(b)(3), which provides that the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."
¶ 13 Common facts exist where the defendant has engaged in a "`common course of conduct' in relation to all potential class members." Oda, 111 Wash.App. at 89, 44 P.3d 8 (quoting King v. Riveland, 125 Wash.2d 500, 519, 886 P.2d 160 (1994)). A representative plaintiff's claim is typical if the same legal theory underlies all class members' claims. See Smith, 113 Wash.App. at 320, 54 P.3d 665.
¶ 14 Emerald City's job description for the general manager position provides a variety of managerial duties, such as controlling product quality, coaching restaurant management and crew members, recruiting and selecting qualified employees, resolving customer issues, analyzing results, and aligning restaurant resources to achieve financial objectives. Weston alleged that despite these expectations, he spent 80 to 90 percent of his *1094 work day taking telephone orders, making pizzas, working cash registers, stocking supplies, setting up tables, delivering pizzas, and cleaning the facilities. He claimed that the putative class members performed similar tasks. Weston argues that Emerald City's organizational structure lends itself to class-wide litigation because the issue for trial is whether managers, which Emerald City deems "exempt," regularly and invariably perform substantial production-related tasks and work long hours for low pay while exercising limited discretion.
¶ 15 Weston patterns his common legal issuewhether Emerald City has a uniform policy of unlawfully treating its managers as exempton Miller, 115 Wash.App. at 825-27, 64 P.3d 49. In Miller, two former Farmer Brothers employees sued the company, alleging that it unlawfully failed to pay them overtime wages. Miller, 115 Wash.App. at 818, 64 P.3d 49. Farmer Brothers paid the employees, who were "route sales representatives," an annual salary plus a monthly commission on new sales. Miller, 115 Wash. App. at 819, 64 P.3d 49. The employees claimed that they spent so much time delivering and stocking supplies for existing customers that they had no time to develop new clients. Miller, 115 Wash.App. at 819, 64 P.3d 49. They argued that Farmer Brothers unlawfully classified them as exempt sales agents when they essentially worked as non-exempt delivery drivers. Miller, 115 Wash. App. at 819, 64 P.3d 49.
¶ 16 Although the appellate court remanded to the trial court because the trial court failed to support its class certification with adequate reasoning, the trial court held that the plaintiffs had shown predominant common questions. Miller, 115 Wash.App. at 825-27, 64 P.3d 49. It found common legal and factual questions because Farmer Brothers classified all of the class members as exempt, did not pay them overtime, and defined the route sales representatives' general duties similarly. Miller, 115 Wash.App. at 825, 64 P.3d 49. It further concluded that "`whether [Farmer Bros.] acted improperly in classifying the plaintiffs [was] the common liability issue that predominate[d] over all other factual and legal issues.'" Miller, 115 Wash.App. at 827, 64 P.3d 49 (quoting Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 267 (D.Conn.2002)); CR 23(b)(3).
¶ 17 In Miller, the representative plaintiff showed that Farmer Brothers created the same work pattern for all class members through Farmers Brothers' defined sales routes. But Emerald City's job description for managers does not require the non-managerial work that forms the factual basis of Weston's claims. And Weston did not provide managers' affidavits or other evidence that Emerald City made all managers perform non-managerial work. Yet Emerald City submitted affidavits from five managers,[5] each of whom contradicted Weston's allegations. Emerald City also submitted questionnaires from 59 managers, and only 9 stated that they spent more than 50 percent of their time performing production work. A large majority of the managers polled said they spent between 60 and 100 percent of their time performing managerial functions.
¶ 18 Weston's argument is similar to the representative plaintiff's claim in Stubbs v. McDonald's Corp., 227 F.R.D. 661 (D.Kan. 2004). In that case, an assistant manager filed a class action alleging that McDonald's "had a business practice of purposefully under-staffing its restaurants . . . to reduce or eliminate overtime of hourly employees, and that this business practice `forced' [him and] other . . . assistant managers" to perform hourly-paid staff members' duties and responsibilities. Stubbs, 227 F.R.D. at 663. The plaintiff submitted an affidavit stating that he spoke with other assistant managers who shared his same job duties and who also did not receive compensation for overtime worked, but he did not provide the court with the names of, or affidavits from, any of those individuals. Stubbs, 227 F.R.D. at 664. *1095 Along with his affidavit, Stubbs submitted an affidavit from his wife, whom McDonald's also employed as a human resources coordinator in its regional office. Stubbs, 227 F.R.D. at 664. Her affidavit echoed her husband's contentions regarding McDonald's business practices. Stubbs, 227 F.R.D. at 664.
¶ 19 McDonald's countered with five affidavits of current assistant managers that "specifically and thoroughly outlined each employee's specific job duties and directly opposed [the] plaintiff's assertions that [McDonald's] has a business practice of forcing . . . assistant managers to perform the duties of hourly employees without compensating them for any overtime worked." Stubbs, 227 F.R.D. at 664. Holding that these declarations rebutted any presumption that McDonald's required all assistant managers to perform hourly employees' duties, the court held that Stubbs had failed to show that he and the other putative class members were similarly situated or that his claim was typical of other employees' claims. Stubbs, 227 F.R.D. at 666, 668.
¶ 20 Like Stubbs, Weston fails to provide any evidence that Emerald City required all managers to perform mostly production duties, not managerial duties. See Stubbs, 227 F.R.D. at 667; Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 608 (C.D.Cal. 2005). Rather, he merely alleged that "[t]o the best of [his] knowledge," (1) "all . . . Emerald City Pizza [managers] performed substantially the same job duties as [he did], worked substantially similar hours during the week, were subject to substantially the same policies and practices, and held substantially the same supervisory authority in relation to . . . Emerald City Pizza['s] . . . Area Coaches[']" authority, (2) "no [manager] . . . received overtime compensation for working over 40 hours in a week," and (3) "all [managers] . . . worked more than 40 hours per week as part of their regularly scheduled duties." CP at 26. Weston's allegations do not establish that Emerald City engaged in a common course of conduct in relation to all potential class members. See Oda, 111 Wash.App. at 89, 44 P.3d 8 (quoting King, 125 Wash.2d at 519, 886 P.2d 160). Without such a showing, class certification is inappropriate.
¶ 21 But Weston argues that "no class-wide discovery has occurred in this case." Br. of Respondent at 2. He maintains that if further discovery reveals a basis for creating subclasses or further defining the class's contours, the trial court has the discretion to do so under CR 23. See CR 23(c)(4), (d). Emerald City counters that "[Weston] has already . . . completed [class discovery,] and . . . all that remains in the trial [schedule] . . . is trial." Reply Br. of Appellant at 1, 5. Regardless of whether Weston has conducted any class-wide discovery, as the party moving for class certification, he bears the burden of establishing CR 23's requirements. Miller, 115 Wash.App. at 820, 64 P.3d 49 (citing Doninger, 564 F.2d at 1311). He has not done so.
¶ 22 We reverse the trial court's decision to certify the class and remand for the trial court to decertify the class.
We concur: HOUGHTON, C.J., and HUNT, J.
NOTES
[1] Chapter 49.46 RCW.
[2] RCW 49.48.010 provides, in relevant part, that "[w]hen any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him on account of his employment shall be paid to him at the end of the established pay period."
[3] CR 23 is identical to its federal counterpart, Fed.R.Civ.P. 23 (Rule 23). Pickett v. Holland Am. Line-Westours, Inc., 145 Wash.2d 178, 188, 35 P.3d 351 (2001) (citing Brown, 6 Wash.App. at 252, 492 P.2d 581).
[4] Although the record does not contain evidence of Weston's annual salary, the parties' briefs imply that he earned more than $13,000 per year ($250 × 52 weeks = $13,000 per year).
[5] For instance, David Chambers, an Emerald City manager, stated that he managed all aspects of his store's operations, supervised and directed all of his store's employees' work, hired and fired employees, and spent the majority of his time performing exclusively managerial duties. Chambers also said that he had never had an area coach overturn a management decision that he made. Chambers' affidavit parallels the four additional managers' affidavits that Emerald City submitted.