# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAVID TURK and MARISSA TURK, individually and as the representative of all persons similarly situated,<br><br>Respondents,<br><br>v.<br><br>UNITED SERVICE AUTOMOBILE ASSOCIATION; USAA CASUALITY INSURANCE COMPANY; USAA GENERAL INDEMNITY COMPANY; and GARRISON PROPERTY AND CASUALITY INSURANCE COMPANY,<br><br>Appellants. | No. 50067-1-II<br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — We granted a motion for discretionary review to United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, and Garrison Property and Casualty Insurance Company (collectively USAA) of three trial court orders. These orders certified a class of plaintiffs, named David and Marissa Turk as class representatives, denied USAA's motion to strike a declaration of the Turks' expert witness, and granted partial summary judgment to the Turks on the issue of a release of liability affirmative defense.

Because a genuine issue of material fact exists as to the parties' intent in signing a release of liability, we reverse the partial summary judgment order. This release of liability gives USAA

a unique defense to Marissa's[1] claim, preventing her from being a typical class member and adequate class representative. Additionally, David is not a class member at all. Because neither class representative is typical of the class, we reverse the class certification order and remand for further proceedings.

FACTS

I.    ACCIDENT

On November 17, 2013, Miguel Perez, an unlicensed, uninsured driver, rear-ended the car Marissa drove, causing her to rear-end the vehicle in front of her. Marissa and her father, David, took Marissa's car to be repaired after the accident. The car took thirty days to repair and they picked it up on December 27. Marissa did not rent a replacement car for the period of repair because she could not afford one.

II.    INSURANCE COVERAGE

At the time of the accident, Marissa had automobile insurance through USAA, including uninsured/underinsured motorists (UIM) coverage. Her UIM coverage provided for property damage (UMPD coverage) and bodily injury (UMBI coverage) in the event an uninsured driver was at fault. Her UIM policy included coverage for loss of use (LOU) of her vehicle during the period of its repair.

At the time of the accident, USAA had an internal rule to not pay UIM coverage until completion of an investigation into the specific case to confirm that the at-fault driver was uninsured. Many other types of insurance, including comprehensive, collision, and rental reimbursement coverage, would apply immediately after the accident, but USAA would not open UIM coverage until it had completed its investigation.

---

[1] To avoid confusion, we refer to the Turks by their first names. We intend no disrespect.

David assisted Marissa in communicating with USAA. David first contacted USAA the day of the accident. He discussed the damage to the vehicle and asked about getting a rental car. The USAA representative told David he would need to speak with an adjuster for details. The following day, David spoke with USAA insurance adjuster Paul Swain. David repeatedly asked about a rental car, but Swain told him that Marissa did not have rental insurance on her policy.

A.      UIM INVESTIGATION

The police responded to the accident and learned that Perez did not have a license or insurance and that he did not own the vehicle he had driven. David relayed this information to USAA in his communication with USAA agents both on the day of the accident and the following day.

Swain explained to David his investigation into the Turks' claim. He said an investigation would be required because the mere fact a rear-end accident occurred did not suggest who was at fault. Swain listed the applicable types of coverage for the accident but did not include UIM, because he did not have any information that the accident potentially involved an uninsured motorist.[2]

USAA received a copy of the police report nine days after the accident. It included insurance information for Marissa and the driver of the car in front of her, but none for Perez. It also stated that Perez did not have a license. On December 4, USAA sent letters requesting insurance information to both Perez and the owner of the car he drove. USAA received a response from Perez on December 30 stating that he did not have insurance.

---

[2] Although David said he reported to USAA that Perez did not have insurance, Swain stated in his deposition that he did not recall David ever asking him about UIM coverage and that "[a]t this point in time, I don't have any information to indicate to me that I'm going to have a potential for an uninsured motorist property damage claim." Clerk's Papers (CP) at 151. Because we granted discretionary review, such factual questions are not yet fully resolved.

By January 6, 2014, Swain had determined that UIM coverage applied both to Marissa's bodily injury and property damage. He then transferred the claim to another adjuster who handled UIM bodily injury claims. That adjuster completed USAA's investigation and determined that UIM coverage applied because Perez did not have insurance.[3]

B.      RELEASE OF LIABILITY

On December 11, 2013, the Turks retained attorney Jeanette Coleman to represent Marissa in her dealings with USAA. The scope of Coleman's representation was disputed by the parties and this dispute continues on appeal. The Turks and Coleman all stated in their depositions that Coleman's representation was limited to Marissa's UMBI claims.

The next day, Coleman sent a letter to USAA stating that her firm represented Marissa. She requested that further communications go through her office and requested "information regarding coverage for UIM, wage loss, car rental, and other benefits available to our client." Clerk's Papers (CP) at 674.

Starting the following January and every month thereafter throughout the year 2014, USAA sent Coleman a letter stating that the claim was unresolved. Most of these letters said it was unresolved because "the uninsured motorist bodily injury claim for Marissa Turk [was] still pending." CP at 472-83.

The Turks also retained Darrell Harber, a public adjuster, to represent Marissa's financial interest in the case. In November of 2014, Harber sent a letter to USAA stating that he had been retained as a public adjuster representing Marissa's financial interest and requesting that all

---

[3] The parties dispute whether the adjuster contacted the Turks' attorney and left a voicemail offering LOU coverage after she completed her investigation. This presents another unresolved factual issue resulting from our granting discretionary review.

communication and correspondence be directed only to him. He stated that Marissa would be making a diminished value claim.

In September 2014, the Turks filed a class action complaint against USAA for breach of contract for USAA's failure to pay LOU damages. The complaint named David and Marissa as class representatives.

On February 18, 2015, Coleman sent USAA a letter demanding $50,000 to settle the bodily injury claims. Her letter did not discuss property damage claims. She negotiated with USAA and agreed to settle the bodily injury claims for $25,000. In March 2015, USAA sent Coleman a proposed release of liability, labeled at the top "Uninsured Motorist Coverage Release (Bodily Injury or Death with Subrogation Provisions)." CP at 304. The first paragraph of the release stated:

> I/we Marissa N Turk , of the City of Tacoma , State of Washington , being at least of the age of majority, for and in consideration of the sum of twenty five thousand ($25,000.00) , the receipt whereof is hereby acknowledged, do release, and forever discharge Garrison Property and Casualty Insurance Company (hereinafter called the COMPANY), in full and final settlement, from any and all claims that I/we may have under the Uninsured Motorist coverage . . . issued in the name of Marissa N Turk by the company for damages, both known and unknown, caused by the ownership, maintenance, or use of an uninsured automobile and resulting from an accident which occurred on or about November 17, 2013 at or near Renton, WA.

CP at 304. At the end of that paragraph, Coleman added a handwritten note that said "Does not include claims for diminished value property damage" and Marissa initialed the change before signing. CP at 308.

At her deposition, Coleman testified that she doesn't like to get involved in property damage disputes and so she frequently crosses out "property damage" on release forms. However, in this case, David had specifically discussed "diminished value" so she wrote that on the release. She stated that she added it "to make it abundantly clear" because she knew the Turks had

somebody else representing them for property damage. CP at 762. She said that "in this particular case, [USAA] knew they weren't dealing with property damage, they were dealing with bodily injury" but that she never discussed property damage or the language of the release with USAA. CP at 758. When asked why she didn't strike out "any and all claims," she said she had assumed the release only covered bodily injury since it said that at the top of the form.

Swain, the first USAA adjuster to work on the claim, said that he did not know of any release form USAA generally used for release of UIM property damage. He said that, if he needed a release for property damage, he would not have used the one Marissa signed because it was "a bodily injury release." CP at 165. However, he stated that he lacked familiarity with the form because he worked exclusively on property damage claims.

USAA wrote Marissa a check for $28,143.99. Writing on the check said: "Nature of Payment: Payment under Underinsured Motorists Bodily Injury, Personal Injury Protection coverage." CP at 616.

In November 2015, USAA moved for summary judgment because, among other reasons, it claimed Marissa had released all claims per the settlement agreement. The court denied the motion because it was "not willing to find that the release cover[ed] bodily injury and property damage." Report of Proceedings (RP) (Jan. 8, 2016) at 42.

The following February, USAA moved to amend its answer and file a counterclaim against Marissa for breaching the release agreement. The court denied the motion without prejudice, finding that the issue felt "more like an affirmative defense rather than a counterclaim." RP (Mar. 4, 2016) at 10. The court stated that if USAA found new facts through discovery it was free to refile its motion.

After taking depositions, USAA refiled its motion to amend its answer and file a counterclaim based on the release agreement. It argued that new facts from Coleman's deposition supported its argument that the release had included all claims, including LOU property damage. The court again denied the motion. USAA sought discretionary review, which this court denied on August 24.

In November 2016, the Turks moved for partial summary judgment as to USAA's affirmative defense that the release Marissa had signed waived all claims, and not solely bodily injury claims. The court granted the motion, finding no genuine issue of material fact. It stated that the contract unambiguously "released the single issue of bodily injury." RP (Dec. 13, 2016 Motions) at 25. It stated that it looked at the contract as a whole, including the language in the title, "and it was for bodily injury not property damage or [LOU]." RP (Dec. 13, 2016 Motions) at 25.

III.   CLASS ACTION

The Turks moved for certification of a class in May 2016 to include:

> All USAA insureds with Washington policies issued in Washington State, where USAA determined the loss to be covered under the Underinsured Motorist (UIM) coverage, and their vehicle suffered a loss requiring repair, or the vehicle was totaled, during which time they were without the use of their vehicle, for a day or more.

CP at 720-21.

On the same day the court granted partial summary judgment to the Turks it also orally granted the Turks' motion for class certification. In so doing, it considered the CR 23 elements of numerosity, commonality, typicality, adequacy of representation, predominance, superiority, and manageability. A written order followed.

USAA again sought discretionary review with this court. A commissioner granted review of the class certification order, finding that the trial court had committed probable error that substantially altered the status quo by certifying the class. *See* RAP 2.3(b)(2). For the sake of judicial economy and because they affect class certification, the commissioner also granted review of the trial court's order granting the Turks' motion for partial summary judgment and another order relating to an expert report.

ANALYSIS

I.    RELEASE OF LIABILITY

USAA contends that the trial court erred by granting partial summary judgment to the Turks as to USAA's release of liability affirmative defense. It claims the proper interpretation of the release creates a genuine issue of material fact. Because there are material facts in dispute, we agree.

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). "Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 797, 123 P.3d 88 (2005). We consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Rublee v. Carrier Corp.*, __ Wn.2d __, 428 P.3d 1207, 1212 (2018).

"A release is a contract and its construction is governed by contract principles subject to judicial interpretation in light of the language used." *Nationwide Mut. Fire. Ins. Co. v. Watson*, 120 Wn.2d 178, 187, 840 P.2d 851 (1992). We interpret a settlement agreement "'in light of the

8

language used and the circumstances surrounding [its] making.'" *Hawkins v. EmpRes Healthcare Mgmt., LLC*, 193 Wn. App. 84, 93, 371 P.3d 84 (2016) (quoting *Sherrod v. Kidd*, 138 Wn. App. 73, 75, 155 P.3d 976 (2007)). "[A]n unconditional general release of 'all claims' include[s] all claims as a matter of law." *Nationwide Mut. Fire Ins. Co.*, 120 Wn.2d at 187.

The primary objective of contract interpretation is to ascertain the mutual intent of the parties at the time they executed the contract. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013). "When a court relies on inferences drawn from extrinsic evidence, interpretation of a contract is a question of fact. But contract interpretation is a question of law when the interpretation does not depend on the use of extrinsic evidence." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 711, 334 P.3d 116 (2014) (internal citation omitted).

"Washington follows the 'objective manifestation theory' of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent." *Viking Bank*, 183 Wn. App. at 712-13. We also look to the context surrounding the contract's execution, including the consideration of extrinsic evidence to help understand the parties' intent. *Viking Bank*, 183 Wn. App. at 713.

Extrinsic evidence is not admissible "to show intention independent of the contract" because "Washington courts focus on objective manifestations of the contract rather than the subjective intent of the parties" such that "subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Brogan & Anensen*, 165 Wn.2d at 775-76.

"If a contract provision's meaning is uncertain or is subject to two or more reasonable interpretations after analyzing the language and considering extrinsic evidence (if appropriate), the

provision is ambiguous." *Viking Bank*, 183 Wn. App. at 713. If the contract is ambiguous, we construe it against the drafter or, where the parties drafted the contract together, we "adopt the interpretation that is the most reasonable and just." *Viking Bank*, 183 Wn. App. at 713.

In *Plancich v. Progressive American Insurance Company*, Plancich was injured in a car accident and sued her insurance provider under her UIM policy. 134 Wn. App. 543, 545, 142 P.3d 173 (2006). Plancich then settled her claim and released Progressive from "all claims associated with her accident." *Plancich*, 134 Wn. App. at 545. Years later, she filed a class action on behalf of Progressive insureds seeking attorney fees, arguing that the release only pertained to UIM claims and did not bar attorney fees under the personal injury protection portion of her insurance contract. *Plancich*, 134 Wn. App. at 545-46.

The fact that the check Progressive paid out "was issued in payment of the UIM claim ha[d] no bearing on the extent of the release." *Plancich*, 134 Wn. App. at 546. Additionally, the broad language of the release, which stated it applied to "all claims arising under the policy" barred Plancich's attorney fees claim. *Plancich*, 134 Wn. App. at 546.

In this case, the release was labeled "Uninsured Motorist Coverage Release (Bodily Injury or Death with Subrogation Provisions)." CP at 308. However, the text of the release stated that it discharged USAA "from any and all claims" under Turk's UIM policy "for damages, both known and unknown, caused by the ownership, maintenance, or use of an uninsured automobile" resulting from the November 17, 2013 accident. CP at 308.

Though the text of the release itself unambiguously states that it applies to "any and all claims" arising from the accident, the heading implies that it was intended to cover only bodily injury claims. Additionally, the check USAA wrote to Marissa stated the "Nature of Payment" was for "Payment under Underinsured Motorists Bodily Injury, Personal Injury Protection

coverage." CP at 616. Pursuant to *Plancich*, however, a payment for a specific type of insurance coverage does not restrict broad release language from covering claims outside that type of coverage. 134 Wn. App. at 546.

Continuing to look at the plain language of the release, Coleman's handwritten addition that the release did "not include claims for diminished value property damage" suggests that she read the release to otherwise include property damage. CP at 308. If she understood the release to include only bodily injury claims, it would have been strange for her to carve out an exception for a specific type of property damage claim. She said that she wrote "diminished value" because David had specifically mentioned it and she wanted to make "abundantly clear" that the release did not include it. However, she also said she did not strike out "any and all claims" because she assumed it only applied to bodily injury, per the heading at the top of the release form. Coleman's statements and decisions are inconsistent because it does not make sense for her to have written in an exception for a specific type of property damage unless she understood the release to include property damage claims.

Looking to the contextual understanding of the parties, a USAA property damage claims adjuster stated that he would not use that release for a property damage claim, but he also stated that he was unfamiliar with the form and generally did not use release forms at all.

In Coleman's initial letter to USAA, she requested that "all communications" be directed through her office and asked for information regarding "coverage for UIM, wage loss, car rental, and other benefits available" to Marissa. CP at 674. This could have suggested to USAA that she generally represented Marissa after the accident, not that her representation was limited to only bodily injury. Even if the arrangement between Coleman and Marissa was actually intended to

only include bodily injury, we evaluate the intent of the parties as objectively expressed, not their subjective intentions.

Considering the language of the contract and the Turks' written-in addition, the release is ambiguous as to whether it released LOU property damage claims. Despite the testimony of the Turks and Coleman that Coleman represented them only for Marissa's bodily injury claims, the objective intent they manifested to USAA did not definitively demonstrate this fact. Whether the parties intended for the release to include all claims or only bodily injury claims is a question of fact. Because this genuine issue of material fact exists, the trial court erred by granting summary judgment on this issue and we reverse.

II.     CLASS CERTIFICATION

USAA contends that the trial court abused its discretion by granting class certification. It claims the court erred by concluding many certification requirements were met,[4] including typicality and adequacy of representation. Because we agree that the typicality and adequacy of representation elements were not met in this case, we reverse the order certifying the class and remand.

A.     LEGAL PRINCIPLES

CR 23 governs class actions. To certify a class, a party must meet the requirements of CR 23(a) by showing numerosity, commonality, typicality, and adequacy of representation. *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 269, 259 P.3d 129 (2011). CR 23(b)(3) additionally requires the purported class representative to "prove that common legal and factual issues

---

[4] The parties focus the majority of their briefing on the proper method for calculating LOU damages, the legitimacy of statistical data to show class wide damages, and whether individual damages calculation issues predominate over class wide issues. Because we reverse the certification order for lack of typicality and adequacy of representation, we do not reach these questions.

*predominate* over individual issues and that a class action is an otherwise superior form of adjudication." *Schnall*, 171 Wn.2d at 269.

We "liberally interpret CR 23 because the 'rule avoids multiplicity of litigation, saves members of the class the cost and trouble of filing individual suits[,] and . . . also frees the defendant from the harassment of identical future litigation.'" *Weston v. Emerald City Pizza, LLC*, 137 Wn. App. 164, 168, 151 P.3d 1090 (2007) (quoting *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 318, 54 P.3d 665 (2002)). "Because CR 23 is identical to its federal counterpart, 'cases interpreting the analogous federal provision are highly persuasive.'" *Schnall*, 171 Wn.2d at 271 (quoting *Schwendeman v. USAA Cas. Ins. Co.*, 116 Wn. App. 9, 19 n.24, 65 P.3d 1 (2003)).

We review a trial court's class certification decision for an abuse of discretion. *Weston*, 137 Wn. App. at 167. A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Weston*, 137 Wn. App. at 167-68.

B.     TYPICALITY AND ADEQUACY OF REPRESENTATION

USAA contends that neither David nor Marissa is actually a member of the class they seek to represent. Accordingly, it claims they are not typical of the class nor are they adequate class representatives. It also argues that Marissa is not typical of the class because of USAA's unique release defense against her claim. We conclude that David is not a member of the class and that the release defense prevents Marissa from being a typical class member or an adequate class representative. Accordingly, we reverse the class certification order.

A plaintiff's claim is typical "'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Smith*, 113 Wn. App. at 320 (quoting *In re Am. Med. Sys.*, 75 F.3d 1069,

13

1082 (6th Cir. 1996)). Where the same unlawful conduct is alleged to have affected both the named plaintiffs and the class members, "varying fact patterns in the individual claims will not defeat the typicality requirement." *Smith*, 113 Wn. App. at 320. "The rule is that a named representative for a plaintiff class must be injured in the same way as all members of the class." *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 505 (9th Cir. 1980).

When determining adequacy of representation, "one of the essential factors to be considered is the presence or absence of adversity within the asserted class." *DeFunis v. Odegaard*, 84 Wn.2d 617, 622, 529 P.2d 438 (1974). "Conflicting or antagonistic interests among members of the alleged class in the subject matter of the litigation, necessitating a determination of priorities between class members" may render a class action improper. *DeFunis*, 84 Wn.2d at 622.

Commonality and typicality "'tend to merge with the adequacy-of-representation requirement'" although the latter "'also raises concerns about the competency of class counsel and conflicts of interest.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157-58 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

The class in this case consisted of:

> All USAA insureds with Washington policies issued in Washington State, where USAA determined the loss to be covered under the [UIM] coverage, and their vehicle suffered a loss requiring repair, or the vehicle was totaled, during which time they were without the use of their vehicle, for a day or more.

CP at 1431. Excluded from the class were those who received payment for substitute transportation from USAA "during the entire period they were without the use of their vehicle." CP at 1432 (emphasis omitted). We consider whether David and Marissa were members of the

class and, if so, whether their claims were typical and whether they can adequately represent the class.

### 1. David Turk

The trial court, found as to David, that he fit within the proposed class because he was "a named insured and participated in chauffeuring his daughter, Marissa Turk, as a result of her vehicle being damaged in an accident and her not receiving a rental from USAA under her UIM PD coverage." CP at 1423. It then stated that "[w]hether that is sufficient to qualify [David] as a class member is not for the Court to decide at present. As such, the Court will appoint [David] as a representative at this time, absent any further motion." CP at 1423.

The class in this case includes all USAA insureds whose vehicle required repair, during which time they were without use of their vehicle for a day or more. Although the record suggests that David had ownership interest in Marissa's vehicle, the parties agree that David never went without any vehicle as the result of an accident.[5] The trial court abused its discretion by appointing David as class representative because he is not a member of the class.

### 2. Marissa Turk

Marissa, however, was a member of the class. Her vehicle suffered a loss requiring repair as the result of a collision that was covered by her UIM insurance and she was without her vehicle for approximately thirty days.[6]

---

[5] The parties disputed at oral argument whether David was a "named insured" in this case. Although David has an identical insurance policy to Marissa's, he is not listed on Marissa's policy for her vehicle.

[6] The parties dispute whether USAA actually offered Marissa payment for her LOU in this case. We do not resolve this factual dispute, but we note that it is another specific defense to Marissa's claim that makes her atypical of the class. This issue is discussed further below.

Where a class representative's claim is subject to unique defenses that do not apply to the other class members, the claim is not typical of the class and the person is not an adequate representative. In *Hisle v. Todd Pacific Shipyards Corporation*, the trial court declined to certify the proposed class because the named plaintiffs were subject to "defenses of res judicata, contract bar, estoppel, statute of limitations, and preemption." 113 Wn. App. 401, 426, 54 P.3d 687 (2002). Because they were subject to all these unique defenses, the named plaintiffs could not meet the requirements of typicality, adequacy of representation, or commonality.[7] *Hisle*, 113 Wn. App. at 427.

Several federal courts "have held that 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)). *Ellis v. Costco Wholesale Corporation* reiterated *Hanon*'s holding that "'a named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508)).

Because Marissa's claim is subject to the release of liability defense, discussed above, she is not typical of the other class members. Accordingly, typicality is not met as to either of the

---

[7] The appellate court rejected these defenses and remanded for reconsideration of the motion. *Hisle*, 113 Wn. App. at 427. As discussed above, the defense in this case presents a material issue of fact that threatens to become the focus of the litigation.

named class representatives. Because there is no typical class representative in this case, we reverse the order certifying the class.[8]

## CONCLUSION

We reverse the trial court's order granting partial summary judgment to the Turks because a genuine issue of material fact exists as to the scope of the release as intended by the parties. We also reverse the trial court's class certification order because neither David nor Marissa Turk has a claim typical of the class and neither is an adequate class representative. We remand to the trial court for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Johanson, J.

---

[8] At oral argument, the Turks suggested the appropriate remedy for an inadequate class representative is to remand with instruction to allow substitution of the class representative. *See* MANUAL FOR COMPLEX LITIGATION § 21.26 at 277 (4th ed. 2004) (citing *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997); *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 194 (S.D.N.Y. 1986)). No party briefed this issue and we do not decide it.