IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| TIMOTHY LUNDQUIST and a class of similarly situated individuals, | No. 85589-1-I |
| Appellants, | ORDER GRANTING MOTION TO AMEND, DENYING MOTIONS FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |
| v. | |
| SEATTLE SCHOOL DISTRICT NO. 1 and STANDARD INSURANCE COMPANY, | |
| Respondents. | |

Appellant Timothy Lundquist and respondents Seattle School District No. 1 and Standard Insurance both moved for reconsideration of the unpublished opinion filed on February 10, 2025. Respondents additionally moved to amend their motion for reconsideration. The panel considered the motions under RAP 12.4 and determined that the motion to amend should be granted, the motions for reconsideration should be denied, the opinion should be withdrawn, and a substitute opinion be filed.

Now, therefore, it is hereby

ORDERED that the respondents' motion to amend is granted; it is further

ORDERED that the appellant's and the respondents' motions for reconsideration are denied; and it is further

No. 85589-1-I/2

ORDERED that the unpublished opinion filed on February 10, 2025, is withdrawn; and it is further

ORDERED that a substitute unpublished opinion be filed.

_Smith, J._

Díaz, J.  Birk, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TIMOTHY LUNDQUIST and a class of similarly situated individuals,<br><br>Appellants,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1 and STANDARD INSURANCE COMPANY,<br><br>Respondents. | No. 85589-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Standard Insurance Company issued a group disability policy to the Seattle School District (SSD) and 17 other school districts in Washington State. Timothy Lundquist worked for SSD as a school teacher until he became disabled. Lundquist applied to Standard for disability coverage, which Standard approved. In paying out coverage, however, Standard did not include time, responsibility, and incentive (TRI) pay, or employer contributions to deferred compensation or health insurance.

Lundquist brought a claim against Standard, alleging that his SSD policy includes TRI and employer contributions to deferred compensation and health insurance. Lundquist successfully obtained certification of a class, including policy holders in all 18 school districts, for that claim. He then moved for summary judgment on the interpretation of the SSD and Central Kitsap School

policies. Standard opposed the motion and sought dismissal of all claims. Standard also moved to decertify the class.

The trial court denied Lundquist's motion and granted Standard's motion, decertified the class and held that the policy did not include TRI, deferred compensation, or health insurance. The court also denied Lundquist's motion to amend to add a Consumer Protection Act claim. Lundquist appeals, asserting that summary judgment and decertification were inappropriate because genuine issues of material fact remain and the class met the CR 23 requirements. He also asserts that the trial court erred in denying his motion for leave to amend.

We reverse the grant of summary judgment but affirm the decertification of the class and denial of leave to amend.

FACTS

Background

Timothy Lundquist taught middle school language arts and physical education in the SSD from 1999 to 2017.

Standard insured SSD under a group policy since 1983. SSD renewed the policy each year until 2020. Although the parties amended the policy several times to increase the amount of earnings covered, they did not otherwise amend the coverage provisions in the policy. The policy defines "insured earnings" as the "annual rate of earnings from your employer, including deferred compensation, but excluding bonuses, overtime pay, and any other extra

compensation."[1] The policy further provides that "[i]f [the insured is] paid on an annual contract basis, [their] rate of earnings is [their] annual contract salary." It does not further define "earnings," "annual contract salary," or "extra compensation."

Lundquist was diagnosed with Parkinson's disease in July 2015. Because his condition was escalating, Lundquist took a paid leave of absence beginning in March 2017. Shortly thereafter, he applied for long term disability compensation through Standard. Standard approved the application and began paying Lundquist benefits in May 2017.

In July 2017, Standard informed Lundquist that it had incorrectly included TRI as part of his benefit calculation and had thus "overpaid" him. Lundquist challenged this determination, but following internal review, Standard concluded that Lundquist's insured earnings did not include TRI.

<u>SSD Suit</u>

In January 2019, Lundquist brought suit against SSD, alleging that his compensation was lower than it should be because SSD failed to report earnings and pay premiums insuring the TRI payment portion of his salary. In doing so, Lundquist obtained certification of a class including all disabled Seattle Public Schools employees subject to SSD's disability policy. SSD challenged the class certification and sought dismissal of the case. The trial court granted certification and SSD appealed. This court ordered the dismissal of Lundquist's claims

---

[1] Central Kitsap School District's Standard policy has an almost identical coverage statement, differing only in the maximum amount offered.

against SSD, citing his failure to exhaust his collective bargaining agreement's grievance procedure.[2]

Standard Suit

While the appeal was pending, Lundquist added claims against Standard to his initial suit. In contrast to his argument that SSD failed to pay the premiums needed to insure TRI, he now alleged that the existing policy included TRI payments. He also asserted that the policy covered employer contributions for deferred compensation and for health insurance because they were not specifically excluded by the policy language.

When Standard requested discovery on Lundquist's claims, Lundquist sought a protective order requiring Standard to serve interrogatories rather than subject Lundquist to an oral video deposition. His spouse submitted a declaration in support of Lundquist's request, attesting to his cognitive decline. The court granted Lundquist's protective order, noting "serious mental symptoms resulting from his Parkinson's disease."

In April 2022, Lundquist then moved to certify the same class for his claims against Standard. The trial court granted class certification.

Summary Judgment Motions

Following class certification, Lundquist moved for partial summary judgment on the meaning of the terms "earnings" and "extra compensation" in the long-term benefit insurance policies that Standard issued to the 18 school

---

[2] *Lundquist v. Seattle Sch. Dist. No. 1*, No. 80211-9-I, slip op. at 28 (Wash. Ct. App. Mar. 1, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/802119.pdf.

districts that employed members of the class. Lundquist argued that the insurance policy should be interpreted to pay benefits based on TRI and employer contributions to pensions and healthcare. He withdrew and replaced his motion for partial summary judgment twice. In June 2022, the court denied Lundquist's third amended motion for summary judgment, holding that the extrinsic evidence of intent was inadmissible, that Standard's evidence concerning the meaning of "Insured Earnings" precluded summary judgment for Lundquist, and stating that "[i]t seems pretty obvious that TRI pay wasn't included" given that "the contract was formed before TRI pay existed."[3]

Lundquist sought discretionary review of the court's denial of his motion for partial summary judgment. Although the court commissioner accepted review, the commissioner found that the trial court committed no obvious error and explained that the denial was proper "in light of the evidence . . . that TRI pay was created by statute after the District purchased the policy." The court commissioner also noted that the trial court's order denying Lundquist's motion for partial summary judgment could provide a basis for decertification of the class.

In March 2023, Lundquist and Standard cross-moved for summary judgment. Lundquist repeated the same arguments contained in his prior motion but narrowed the scope from 18 school districts to Seattle and Central Kitsap.

---

[3] The Washington legislature first authorized school districts to exceed state salary limits by entering into locally-funded supplemental contracts for " 'additional time . . . additional responsibilities, or . . . incentives' " (TRI pay) in 1987. *Delyria v. Wash. Sch. for the Blind*, 165 Wn.2d 559, 564, 199 P.3d 980 (2009) (quoting RCW 28A.400.200(4)(a)).

Standard opposed Lundquist's motion and sought summary judgment against the class on all 18 policies. Standard also moved to decertify the class.

The court granted Standard's motion for summary judgment, concluding that Standard did not breach the policy or violate the Insurance Fair Conduct Act (IFCA), RCW 48.30.010-.015, while denying Lundquist's on both substantive and procedural grounds. The court also decertified the class.

### Motion to Amend

Ten days after the summary judgment hearing, Lundquist requested leave to amend to add a Consumer Protection Act (CPA), chapter 19.86 RCW, claim. The trial court denied Lundquist's request.

### Appeal

Lundquist appeals the order granting Standard's motion for summary judgment, the order denying his motion for summary judgment, the decertification of the class, and the denial of his request for leave to amend.

### ANALYSIS

### Summary Judgment

Lundquist contends the trial court erred both in granting Standard's motion for summary judgment and in denying his own motion because the basic rules of contract interpretation require looking to the plain language of the policy; the trial court did not comply with CR 56 by weighing evidence, relying on inadmissible evidence, and entering findings of fact; and the record did not support the dismissal of Lundquist's IFCA claim. Standard maintains that the trial court did not err because it correctly interpreted the policy, did not inappropriately weigh

evidence or err by entering findings of fact, and Lundquist's IFCA claim fails as a matter of law. We conclude that the trial court erred in granting Standard's motion for summary judgment and did not err in denying Lundquist's motion for summary judgement because genuine issues of material fact remain as to policy language and Lundquist's IFCA claim. We similarly conclude that the court erred in entering findings as to those disputed material facts.

We review a trial court's grant or denial of a motion for summary judgment de novo, engaging in the same inquiry as the trial court. *U.S. Bank Nat'l Ass'n v. Roosild,* 17 Wn. App. 2d 589, 596, 487 P.3d 212 (2021). Viewing all evidence and reasonable inferences in the light most favorable to the nonmoving party, summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 200 Wn.2d 315, 320, 516 P.3d 796 (2022); CR 56(c). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

A trial court may not weigh evidence, assess credibility, or otherwise resolve issues of material fact on summary judgment. *Haley v. Amazon.com Servs., LLC*, 25 Wn. App. 2d 207, 217, 522 P.3d 80 (2022). And a trial court may only enter findings of fact when ruling on a motion for summary judgment under the limited circumstances detailed in CR 56(d). *Haley*, 25 Wn.App.2d at 234-35.

Under CR 56(d), if the motion for summary judgment is not dispositive on the entirety of the case, the court may make findings only as to material facts that

7

"exist 'without substantial controversy.' " *Haley*, 25 Wn.App.2d 207 at 234 (quoting CR 56(d)). And the court "must examine the pleadings and evidence before it and inquire of counsel to ensure that the facts are agreed." *Haley*, 25 Wn.App.2d 207 at 234-35. If the trial court makes findings of fact without satisfying CR 56(d), the findings are nullities. *Haley,* 25 Wn.App.2d 207 at 235.

Here, Lundquist challenges the trial court's order granting Standard's motion for summary judgment and denying his own motion for partial summary judgment. Because Standard's motion for summary judgment is dispositive on all aspects of the case, CR 56(d) did not permit the trial court to enter any findings of fact. However, because Lundquist only sought partial summary judgment, his motion was not dispositive of all aspects of the case. The trial court therefore had authority under CR 56(d) to make findings of material fact as to Lundquist's motion, but only as to those facts that exist without substantial controversy. We conclude that the trial court reached beyond the bounds of CR 56(d).

First, no evidence in the record shows that the trial court communicated with counsel to confirm that the facts were agreed upon. In fact, the court made findings of fact as to two essential elements of the case, both of which were actively disputed. The trial court stated that "[TRI] is by definition 'other extra compensation' " (emphasis omitted) and that "neither SSD nor . . . Lundquist's Union ever represented to SSD employees that the SSD Policy would pay LTD benefits based on TRI, employer contributions to retirement or health benefits, or anything other than employee base pay." Lundquist provided multiple pieces of

8

evidence challenging both statements, including documents supplied to SSD employees describing the disability policy consistent with Lundquist's interpretation, testimony of a school financing expert statement that TRI pay is part of a teacher's base salary, a declaration that a Standard form submitted by SSD for Lundquist included both TRI and the employer's pension contributions in his annual earnings, and his collective bargaining agreement (CBA) establishing that TRI is part of Lundquist's annual salary. Even Standard acknowledged the dispute, stating at the motion hearing that "[Lundquist's evidence] disputes our evidence. That flies in the face of our evidence and raises disputed facts."

Because the trial court entered findings of fact as to facts that do not exist without substantial controversy, the trial court erred. Therefore, those findings of fact are nullities on appeal.

We next conclude that the trial court erred in granting Standard's motion for summary judgment because, with findings of fact as nullities, genuine issues of material fact remain as to policy interpretation and Lundquist's IFCA claim.

1. Policy Language

Lundquist contends that the trial court erred in granting Standard's motion for summary judgment because the plain language of the policy, understood by the average insurance purchaser, included TRI and employer contributions for deferred compensation and health insurance. Because Lundquist raised genuine issues of material fact as to the interpretation of the policy, we agree.

The rules of interpreting insurance contracts are well settled and are matters of law for the court to decide. *Seattle Tunnel Partners*, 200 Wn.2d

9

at 321. Washington follows the "objective manifestation theory" of contract interpretation, under which courts focus on the reasonable meaning of the contract language to determine the parties' intent at the time they entered into the agreement. *Hearst Commc'ns, Inc., v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

Initially, the plain meaning rule meant that a court would only look to evidence of the parties' intent as shown by the circumstances of its making, the subsequent conduct of the parties, and the reasonableness of their interpretations if the contract was ambiguous on its face. *Berg v. Hudesman*, 115 Wn.2d 657, 666, 801 P.2d 222 (1990). However, in *Berg*, the Washington Supreme Court "reject[ed] the theory that ambiguity in the meaning of contract language must exist before evidence of the surrounding circumstances is admissible." 115 Wn.2d at 669. The Supreme Court has since further clarified *Berg*, providing that "surrounding circumstances and other extrinsic evidence are to be used 'to determine the meaning of specific words and terms used' " in a contract. *Hearst*, 154 Wn.2d at 503 (emphasis omitted) (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695-96, 974 P.2d 836 (1999)).

In interpreting an insurance contract, its specific language "must be given fair, reasonable, and sensible construction as would be given by an average insurance purchaser." *Mid-Century Ins. Co. v. Henault*, 128 Wn.2d 207, 213, 905 P.2d 379 (1995). Accordingly, "[u]ndefined terms in an insurance contract must be given their 'plain, ordinary, and popular' meaning." *Panorama Vill. Condo. Owners v. Allstate Ins.*, 144 Wn.2d 130, 139, 26 P.3d 910 (2001) (quoting *Boeing*

10

*Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990)). In determining the plain or ordinary meaning of a word, courts look to standard English dictionaries. *Panorama*, 144 Wn.2d at 139.

In its motion for summary judgment, Standard asserted that Lundquist ignored key policy terms and that the "undisputed facts" demonstrated that the parties did not intend "Insured Earnings" to include TRI pay or employer benefit contributions. This, Standard, maintained, was sufficient to support the grant of summary judgment. But, as noted above, the facts at issue were not undisputed. Rather, Lundquist provided considerable evidence to the contrary. Because we consider the evidence in the view most favorable to the nonmoving party, genuine issues of material fact remain as to Standard and SSD's intent to include or exclude TRI and employer benefit contributions from the meaning of "Insured Earnings."

As noted above, Lundquist appropriately introduced extrinsic evidence to help determine the meaning of specific contract language. Both parties assert that the language of the contract is unambiguous, and yet in disputing the plain, ordinary, and popular meanings of the terms "contract salary" and "earnings," present contradictory results. A similar dispute exists as to the parties' intent in forming the contract. Lundquist provided evidence that SSD supplied documents to employees describing the disability policy consistent with Lundquist's interpretation, testimony from a school financing expert statement that TRI pay is part of a teacher's base salary, a declaration that SSD submitted a Standard form including both TRI and the employer's pension contributions in his annual

11

earnings, and that the CBA established TRI as a part of Lundquist's annual salary. Given this evidence, reasonable minds could easily differ on whether SSD and Standard intended to include TRI and employer contributions under "Insured Earnings."

Because the trial court's findings of fact are nullities and we consider the evidence in the view most favorable to the nonmoving party, genuine issues of material fact remain as to the interpretation of policy language. Because genuine issues of material fact remain, summary judgment is not appropriate for either party.

### 2. IFCA Claim

Lundquist also asserts that the trial court erred by improperly granting summary judgment on his IFCA claim. Standard disagrees, asserting that Lundquist's IFCA claim fails as a matter of law. Summary judgment on the IFCA claim is not appropriate because, without a determination regarding the policy language, genuine issues of material fact remain as to Lundquist's IFCA claim.

Washington's IFCA allows an insured "who is unreasonably denied a claim for coverage or payment of benefits" to recover damages and costs. RCW 48.30.015(1). To prevail on such a claim, the plaintiff must prove: (1) an unreasonable denial; (2) actual damage; and (3) proximate causation. WPI 320.06.01. IFCA's private cause of action is not available "in the absence of any unreasonable denial of coverage or benefits." *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 672, 389 P.3d 476 (2017).

Standard asserts that Lundquist failed to provide evidence of an unreasonable denial of benefits because Standard paid Lundquist the benefits he was due, which do not include TRI or employer contributions to retirement or healthcare. Without evidence of an unreasonable denial, Standard contends, Lundquist's claim fails as a matter of law. But because genuine issues of material fact remain as to whether the policy included TRI and employer contributions, Lundquist's assertion of unreasonable denial does not necessarily fail. The trial court erred in granting summary judgment on Lundquist's IFCA claim.

### Decertification

Lundquist contends that the trial court erred in disregarding the law of the case and decertifying the class. Standard again disagrees, asserting that the law of the case doctrine does not apply and that Lundquist failed to meet the CR 23 criteria to establish a class. First, the law of the case doctrine does not apply. Next, because Lundquist dropped 16 of the 18 school districts in his motion for summary judgment, attempting to litigate the class action piecemeal and failing to satisfy the CR 23(a) requirements, we conclude that the trial court did not abuse its discretion in decertifying the class.

We review class certification for manifest abuse of discretion. *Pellino v. Brick's Inc.*, 164 Wn. App. 668, 682, 267 P.3d 383 (2011). "We will uphold the trial court's decision if the record shows that the court considered the criteria for class certification, and the decision is based on tenable grounds and is not manifestly unreasonable." *Pellino*, 164 Wn. App. at 682. A class certification

13

order is interlocutory and is always subject to later modification or decertification. *Weston v. Emerald City Pizza LLC*, 137 Wn. App. 164, 168, 151 P.3d 1090 (2007).

1. Law of the Case

Lundquist first maintains that the trial court erred in decertifying the class because, in reversing the first trial judge's certification, the second trial judge disregarded the law of the case. Standard disagrees. Both parties cite to federal cases when addressing the doctrine. Because the Washington law of the case doctrine applies to appellate decisions, which are not at issue here, the doctrine does not apply.

The law of the case doctrine provides that "an appellate holding enunciating a principle of law must be followed in subsequent stages of the same litigation." *State v. Merrill*, 183 Wn. App. 749, 757, 335 P.3d 444 (2014). Generally, under the doctrine, an appellate court will refuse to consider issues that were decided in a prior appeal. *Folsom v. County of Spokane*, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988); *Merrill*, 183 Wn. App. at 757.

Here, no appellate decision is at issue. Rather, both parties address the difference between two trial judge's rulings. Because the doctrine does not apply in such circumstances, the trial court was not bound to the first judge's decision.

2. CR 23(a)

Lundquist next asserts that the trial court erred in decertifying the class because he establishes commonality, typicality, and adequacy of representation as required by CR 23(a). Standard contends that decertification was appropriate

14

because Lundquist failed to satisfy any of the requirements. We conclude that the trial court did not abuse its discretion.

Class actions are specialized suits that, as a general rule, must be brought and maintained in strict conformity with the requirements of CR 23. *Oda v. State*, 111 Wn. App. 79, 92, 44 P.3d 8 (2002). "In order to certify a class action under CR 23, the plaintiffs must show numerosity, commonality, typicality, and adequacy of representation." *Pellino*, 164 Wn. App. at 682.

A class shows numerosity if the class is so numerous that joinder of all members is impracticable. CR 23(a). Commonality is then satisfied when the alleged facts indicate that the defendant was engaged in a " 'common course of conduct in relation to all potential class members.' " *Pellino*, 164 Wn. App. at 682 (internal quotation marks omitted) (quoting *Oda*, 111 Wn. App. at 91). Similarly, a class shows typicality if the plaintiff's claim arises from the same course of conduct that gives rise to the class members' claim and is based on the same basic legal principles. CR 23(a)(3). Lastly, the class representative must fairly and adequately protect the interests of the class. CR 23(a).

Here, as Lundquist cannot establish commonality, he fails to satisfy CR 23. Lundquist's motion seeking partial summary judgment on only two of the 18 policies within the class demonstrates that the court would be required to evaluate non-common evidence of intent as to each contract. In dropping 16 of the 18 policies, Lundquist essentially concedes that those 16 excluded policies are distinct. Because the court must examine individualized evidence to interpret

each policy, the trial court did not abuse its discretion in concluding Lundquist failed to establish commonality under CR 23(a)(2).

Because the failure to satisfy any one of the CR 23(a) criteria requires certification, the trial court did not manifestly abuse its discretion in decertifying the class.

3.  CR 23(b)

Lastly, Lundquist claims that the class action is maintainable under CR 23(b)(1) and (b)(2).  Because Lundquist fails to satisfy the CR 23(a) requirements, we do not reach the issue of CR 23(b).

### Leave to Amend

Lundquist maintains that the trial court erred in denying his motion for leave to amend to add a CPA claim because adding the claim did not prejudice Standard.  We disagree.

We review a trial court's denial of leave to amend for manifest abuse of discretion.  *Ensley v. Mollmann*, 155 Wn. App. 744, 759, 230 P.3d 599 (2010).  Again, "a manifest abuse of discretion arises when 'the trial court's exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons.' "  *State v. Case*, 13 Wn. App. 2d 657, 668, 466 P.3d 799 (2020) (quoting *State v. Lile*, 188 Wn.2d 766, 782, 398 P.3d 1052 (2017)).

Under CR 15(a), a trial court should "freely" grant leave to amend "when justice so requires."  A trial court may grant such leave unless the amendment would cause undue hardship or prejudice to the opposing party.  *Caruso v. Local Union No. 690*, 100 Wn.2d 343, 349-50, 670 P.2d 240 (1983).  "In determining

prejudice, a court may consider undue delay and unfair surprise as well as the futility of amendment." *Haselwood v. Bremerton Ice Arena, Inc.*, 137 Wn. App. 872, 889, 155 P.3d 952 (2007).

Lundquist contends that granting leave to amend would not have prejudiced Standard's ability to defend this case because the added CPA claim arose out of the same facts as the other two claims raised and the CPA claim overlapped substantially with his IFCA claim. But Lundquist fails to acknowledge that he waited until 10 days after the last hearing on the cross-motions for summary judgment and the motion to decertify to move for leave to amend, causing undue delay.

Despite actively arguing that his CPA claim arose out of the same facts as his initial claims, Lundquist does not make any showing as to why he could not have included the CPA claim earlier. And because Standard's response to Lundquist's motion for partial summary judgment and Standard's argument as to decertification were based only on Lundquist's original claims, this last-minute addition would require new discovery, new experts, and likely, new motions. Accordingly, the trial court appropriately denied his motion based on the undue delay, and therefore prejudice, the amendment would cause. On remand, however, Lundquist may again move to add a CPA claim.

Given the record in front of the trial court, we conclude that the trial court did not manifestly abuse its discretion in denying Lundquist's motion for leave to amend.

17

We reverse the grant of summary judgment but affirm class decertification and the denial of leave to amend based on the facts that were before the court at that time.

WE CONCUR:

Díaz, J.